**Chavez T. SMITH, Appellant,**

v.

**UNITED STATES, Appellee,**

James D. McGee, Appellant,

v.

United States, Appellee,

James Evans, Jr., Appellant,

v.

United States, Appellee.

No. 99–CF–914, 99–CF–940, 99–CF–1031.

District of Columbia Court of Appeals.

Argued Nov. 13, 2001.

Decided Dec. 9, 2003.

Ed Wilhite, appointed by the court, for appellant James Evans, Jr.

Susan A. Nellor, Assistant United States Attorney, with whom Kenneth Wainstein, United States Attorney at the time the brief was filed, and John R. Fisher, Mary Patrice Brown, and James S. Sweeney, Assistant United States Attorneys, were on the brief, for appellee.

Before WAGNER, Chief Judge, and FARRELL and REID, Associate Judges.

WAGNER, Chief Judge:

Following a jury trial, appellants, Chavez T. Smith, James D. McGee and James Evans, Jr., were convicted of one count of obstructing justice (D.C.Code § 22–722(a)(1)) (2001). All of the appellants argue for reversal on the grounds that the evidence was insufficient to support their convictions. Appellants, McGee and Evans, also argue that: (1) defense counsel and the court should not have permitted a jury tampering case to be tried by jury; (2) the jury selection process was unfair; (3) they did not knowingly waive their right not to testify; (4) the court erred in failing to instruct the jury on confession, identification or the absence of flight; and (5) the sentences imposed are excessive and constitute cruel and unusual punishment. Concluding that the evidence was insufficient to support Smith's conviction, we reverse his conviction. Finding no error with respect to the claims of McGee and Evans, we affirm the judgment of the trial court in their cases.

## I.

### Factual Background

Thomas F. Dunn, appointed by the court, for appellant Chavez T. Smith.

Joanne Vasco, Washington, DC, appointed by the court, for appellant James D. McGee.

On February 18, 1999, the complaining witness, Michele Baxter, was on jury duty in the Superior Court of the District of Columbia. While Baxter and other mem-

bers of the venire panel stood in line awaiting admission into the courtroom for a criminal case in which Smith was a defendant, she noticed across the hall two men who she learned later were appellants, Smith and McGee. She noticed them because of a comment they made about a lady's skirt. Baxter recalled that she looked at Smith during the voir dire, but she could not recall whether he looked at her.

Baxter testified that the next morning, she was walking down Indiana Avenue from the Metro train to the courthouse when she noticed Smith at a hot dog stand with McGee, whom she had seen with Smith the day before, and another person who was wearing a bomber jacket, later identified as Evans. As she neared the hot dog stand, she noticed the men looking at her.[1] The man in the bomber jacket said to her, "Miss Parker, Miss Parker, you better remember to say not guilty in my case, in my trial." Baxter thought that he was "talking about the previous day, jury selection day." At the time, she noted that Smith was looking towards her. As Baxter passed the group, McGee said "Yes, you was, I remember you from yesterday." She also heard McGee say that she was a juror "because he remembered her from yesterday."

As Baxter continued to walk, she said, "The Lord is my shepherd and I shall not want." McGee responded, "[a]nd he knows what I want." Baxter came to a curb where she had to stop to await the change of a traffic light, and at that point, the men were "directly adjacent like side by side" to her. She said that McGee was the closest to her, and the man in the bomber jacket was next to McGee. She

testified that Smith was "on the side of [Evans] but directly on the side of him like one step—not even one step behind him." She testified that Smith was looking at Evans and her, but he did not say anything. She testified that the man in the bomber jacket said, "You better remember to say not guilty, not guilty on my trial, you better remember to say not guilty, not guilty on my trial." Agreeing, McGee said, "Yes, you Miss Parker because I remember you from yesterday, and you know what I want when I made the statement." Baxter testified that McGee continued to remind her to say not guilty as she crossed the street. On direct examination, Baxter could not recall the group laughing in response to anything that was said, but she was aware of them laughing. However, she could not "recall seeing [Smith] laugh." On cross-examination, she could not recall the other men laughing or so testified.

Baxter told one of the jurors about the incident and subsequently informed a deputy U.S. Marshal and the trial judge. The deputy testified that Baxter appeared to be "extremely troubled" and "anxious" over the incident. After the jury was dismissed, Baxter was asked to see if she could identify the men involved, and she identified Smith, Evans and McGee.

II.

All of the appellants argue that the evidence was insufficient to support the convictions. In reviewing a claim of evidentiary insufficiency, we view the evidence in the light most favorable to the government, recognizing the province of the fact finder to weigh the evidence, resolve issues of credibility and to draw rea-

---

1. On cross examination, Baxter described what she observed from the group while walking towards the courthouse as "eyes, eye contact, eyestares." She also testified that another man wearing gray was also at the hot dog stand; however, Baxter never attributed any comments to him.

sonable inferences from the evidence presented. *Mitchell v. United States*, 683 A.2d 111, 114 (D.C.1996) (citation omitted); *Zanders v. United States*, 678 A.2d 556, 563 (D.C.1996) (citing *Dyson v. United States*, 450 A.2d 432, 436 (D.C.1982) (other citation omitted)). " '[T]hat [a] case may rest on circumstantial evidence is of little consequence if the evidence is such that it may reasonably convince a trier of fact beyond a reasonable doubt.' " *Gayden v. United States*, 584 A.2d 578, 580 (D.C. 1990) (quoting *Chaconas v. United States*, 326 A.2d 792, 797 (D.C.1974)), *cert. denied*, 502 U.S. 843, 843, 112 S.Ct. 137 (1991). This court will reverse only where the government has failed to present evidence from which a reasonable mind might fairly infer guilt beyond a reasonable doubt. *In re M.I.W.*, 667 A.2d 573, 575 (D.C.1995); *Roy v. United States*, 652 A.2d 1098, 1103 (D.C.1995) (citation omitted). Applying that standard, we review appellants' arguments that the evidence was insufficient to convict them of obstruction of justice.

To establish the charge of obstructing justice, the government was required to prove beyond a reasonable doubt that the accused: (1) endeavored to influence, intimidate or impede a juror; (2) did so by corruptly persuading that juror; (3) acted knowing or believing that person was a juror; and (4) did so with the specific intent to influence, intimidate or impede that juror in the exercise of his or her official duty. D.C.Code § 22–722(a)(1); CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 4.81 (4th ed.2002). McGee focuses on the third and fourth elements of the offense, contending that the evidence was insufficient to show that he had knowledge that the complaining witness was a member of Smith's jury or that he acted with the intent to influence her in the exercise of her duty. Evans argues simply that the government's evidence concerning the encounter is insufficient to prove that he committed the crime. Smith argues that there was no evidence supporting the government's theory that he aided or abetted the commission of the offense. We consider each of these challenges.

### A. *McGee's Sufficiency Challenge*

McGee argues that the government failed to prove that he knew that Baxter was a member of Smith's jury and acted corruptly with the intent to influence her. Central to his argument is a portion of Baxter's account of the incident. Baxter testified that as she walked toward the courthouse, she saw Smith and three other men standing near a hot dog stand. She said that one of them, a man in a bomber jacket, twice addressed her as Ms. Parker and told her to remember to say not guilty in his trial. When she did not respond, McGee said, "Yes, you was, I remember you from yesterday." McGee contends that any statements attributed to him must be viewed in the context of the comment of the man in the bomber jacket. Viewed in that context, McGee contends, the evidence proves at best that he had knowledge that Baxter was a juror, but not that she was a member of Smith's jury or that he acted with the intent to influence her.

Viewed in the light most favorable to the government, a reasonable juror could find that McGee knew that Baxter was a member of Smith's jury and that he acted with the intent to influence her decision as a juror. In addition to the evidence upon which McGee relies for his argument, there was other evidence that he had the requisite knowledge and intent to commit the offense. Specifically, Baxter testified that she had seen Smith and McGee the day before, seated together in the hallway outside of the courtroom, where she and other members of the venire panel were

waiting for more than an hour for the selection process to begin. She testified that she was selected and sworn as a juror in Smith's case that day and that it was the only jury on which she was selected to serve. Baxter also testified that during the encounter the next day, McGee said to her that she was a juror and that he remembered her from the previous day.

■ Although there is no evidence that McGee was present in the courtroom when Baxter was actually selected as a juror or that Smith informed him of that fact, the evidence, both direct and circumstantial, provides a basis for the jury to conclude reasonably that McGee knew that she was.[2] McGee was in a position to observe Baxter among the jurors waiting to go into Smith's trial, and he admitted knowing that she was a juror because he remembered seeing her the previous day. Since Baxter testified that she had not been on any other cases and that she had seen McGee with Smith sitting together in the area of the courtroom, it is reasonable to infer that McGee saw Baxter while she was waiting to be called in the courtroom for Smith's case.[3] Considered with this evidence, McGee's remarks to Baxter provide support for a finding that he knew Baxter as a juror because of the events associated with Smith's case the day before and that is what he was making reference to. It is of no consequence that the person in the bomber jacket who spoke to Baxter first during the encounter did not have her correct name. It is clear from the other evidence that McGee intended to influence the juror he saw the day before outside the courtroom where Smith's trial was being held and that he knew Baxter was that person.

■ Ordinarily, the intent to intimidate or influence a juror "must be inferred from the context and nature of the alleged criminal conduct." *McBride v. United States,* 393 A.2d 123, 131 (D.C.1978), *cert. denied,* 440 U.S. 927, 99 S.Ct. 1260, 59 L.Ed.2d 482 (1979). Baxter said that McGee stood closest to her when she waited for the traffic light before continuing to the courthouse and that he continued walking with her after the light changed. She described his side-stepping and looking at her, then back at Smith and the other men as he continued to make the remarks. According to Baxter, McGee told her to remember "not guilty," and she knew what he wanted. Baxter testified that although McGee was not blocking her path, she felt that he was attempting to interrupt her progress and that she was shocked and scared. When Baxter reached the courthouse, she cut across the grass to avoid him. The nature of McGee's remarks to Baxter that she remember to vote not guilty, admittedly with the knowledge that he knew her in connection with her jury service, and the manner in which he approached her near the courthouse before the trial resumed are sufficient for a reasonable juror to find that he had the specific intent to intimidate her and influence the juror's vote. Baxter, who was intimidated by the conduct, perceived McGee's remarks as an effort to influence how she voted in the case, although it is not required that the victim actually be intimidated. *See Irving v. United States,* 673 A.2d 1284, 1289 (D.C.1996). Here, there was evidence that McGee's remarks were

---

**2.** This court makes no distinction between direct and circumstantial evidence when determining the sufficiency of the government's proof. *See Bernard v. United States,* 575 A.2d 1191, 1193 (D.C.1990) (citations omitted).

**3.** It is within the province of the fact finder to draw reasonable inferences from the evidence presented. *Mitchell, supra,* 683 A.2d at 114.

successful in intimidating the juror, as the evidence shows he intended.

## B. *Evans' Sufficiency Challenge*

■ Evans argues that the evidence was insufficient to convict him because: (1) the evidence showed that his encounter with Baxter was accidental; (2) there was no proof that he played any role in the incident at the hot dog stand; (3) Baxter never identified him as the person in the bomber jacket; and (4) the man in the bomber jacket referred to her as Ms. Parker, and he was not asking her to vote not guilty in Smith's case. Evans' arguments are readily disposed of. There was evidence from which the jury could find that Evans was the person in the bomber jacket who initiated the remarks about how Baxter should vote as a juror. While Baxter could not make an in-court identification of Evans, she identified him during an identification procedure conducted in the courthouse the day that the offense occurred. She testified that the man in the bomber jacket was among the three men who were shown to her at that time and that she was absolutely certain that he was the person who initiated the remarks referring to her as "Ms. Parker." A deputy United States Marshal, Andrew Smith, testified that the three men whom Baxter identified at the show-up were Evans, Smith and McGee. A police officer, John Hendrick, also testified that Baxter identified all three men that day. Since Baxter testified that she saw the man in the bomber jacket during the show-up procedure and could identify both Smith and McGee and their roles in the incident, it was reasonable for the jury to conclude that Evans was the man in the bomber jacket.

The evidence having been sufficient to show that Evans was the man in the bomber jacket, the only question remaining is whether the evidence was sufficient for the jury to conclude that McGee endeavored to impede or intimidate Baxter in the performance of her official duty. That their encounter at the hot dog stand may have been by chance does not dispel the evidence that Evans exploited the encounter. It was Evans who initiated the remarks about Baxter's jury service, telling her that "you better remember to say not guilty in my case, in my trial." He continued those warnings as he walked toward the courthouse with McGee, who made similar remarks, and with Smith, who was on trial at the court. While Evans attached the wrong name to Baxter, the evidence showed that he knew that she was a juror in a case. His companion, McGee, confirmed that he knew her from having seen her the day before, and Evans thereafter continued his admonitions to Baxter about how she should vote as she made her way to the courthouse for Smith's trial. All of these events occurred in Smith's presence. Evans acknowledged making a statement to the marshals that Smith told him that Baxter was on his jury and that he then asked her if she was; however, Evans denied at trial only that Smith told him that before he asked her. It is reasonable for the jury to infer from this evidence that Evans knowingly and intentionally made an effort to accomplish the unlawful purpose that the obstruction of justice statute was intended to prevent. *See Irving, supra,* 673 A.2d at 1289 (citation omitted). The evidence was adequate to support Evans' conviction.

## C. *Smith's Insufficiency Challenge*

■ Smith's argument differs from that of his co-appellants. He argues that the evidence was insufficient to support the government's theory that he aided and abetted the commission of the offense. He contends that there was no evidence that he participated in any way in the crime.

The government argues that the evidence, when viewed in the light most favorable to it, is sufficient to prove that Smith aided and abetted the crime that occurred in his presence.

 In order to prove an offense on an aiding and abetting theory, the government is required to prove: (1) that the offense was committed by someone; (2) that the accused participated in the commission of the offense; and (3) that he did so with guilty knowledge. *Green v. United States,* 718 A.2d 1042, 1062 (D.C.1998) (quoting *West v. United States,* 499 A.2d 860, 865 (D.C.1985)), *cert. denied,* 526 U.S. 1011, 119 S.Ct. 1156, 143 L.Ed.2d 222 (1999). "While mere presence at the scene of a crime is insufficient to establish criminal participation in the offense, proof of presence at the scene of a crime plus conduct which designedly encourages or facilitates a crime will support an inference of guilty participation in the crime as an aider and abettor." *Jefferson v. United States,* 463 A.2d 681, 683 (D.C.1983) (citing *Quarles v. United States,* 308 A.2d 773, 774–75 (D.C.1973)). Smith contends that the evidence showed only that he was present at this chance encounter with Baxter and that the only action he took was to urge his co-defendants *not* to say anything to Baxter. The government argues that the evidence that Smith aided and abetted the offense consisted of "his presence during the entire incident, the fact that he continually stared (or watched) Baxter throughout the incident and laughed when she attempted to rush away, and that McGee looked at Smith as he (McGee) warned Ms. Baxter to vote not guilty." Further, the government contends that

Smith did not disassociate himself from McGee and Evans during the incident. Even when viewed in the light most favorable to the government, the evidence is inadequate to support a finding of his guilt beyond a reasonable doubt.

There was no evidence that the encounter was other than a chance meeting. It is conceded that Smith never said anything to Baxter. Baxter, the government's only witness to the encounter, acknowledged that Smith said nothing to her.[4] The government contends that it was sufficient that Smith stared or watched Baxter while Evans and McGee spoke to her and laughed when she walked away. It argues that even if Smith did not participate actively by making the remarks, his presence, status as defendant in the trial on which Baxter was a juror, and his behavior were sufficient to establish that he participated in the obstruction of justice. In support of its argument, the government relies principally on several cases, none of which lend support to its argument in this case.

 In the first, *Montgomery v. United States,* 384 A.2d 655 (D.C.1978), the defendant was convicted of attempted petit larceny of linen from a department store on an aiding and abetting theory. *Id.* at 657–58. There was evidence from which it could be inferred that Montgomery had knowledge that his companion was stealing merchandise and that he was acting as a look-out. *Id.* at 659. Not only did Montgomery depart from the area hastily after the theft, but he subsequently tried to bribe the store detective in an effort to influence his testimony.[5] *Id.* at 658–59.

---

4. Although not determinative of the issue, McGee and Evans testified that Smith told them either to leave Baxter alone or not to talk to her.

5. Although flight alone does not imply guilt, "it cannot be ignored when other incriminating circumstances are present." *Montgomery, supra,* 384 A.2d at 659 (citations omitted). Evidence that the accused sought to impede a witness from testifying "is circumstantial evi-

Based on this evidence, this court held that a reasonable juror could find beyond a reasonable doubt that Montgomery assisted in the theft by serving as a look-out, and therefore was guilty of aiding and abetting the crime. *Id.* at 660. Unlike *Montgomery*, there is no evidence in the present case that Smith knowingly associated himself with the criminal conduct or engaged in any affirmative conduct to bring it about or make it succeed. It is not reasonable to infer that his presence under the circumstances of this case warrant a finding of his participation in the crime.

In *Creek v. United States*, 324 A.2d 688 (D.C.1974), also relied upon by the government, the court found sufficient for Creek's conviction of robbery evidence that he was with the robber immediately before the robbery, retraced his steps back to the victim's home, stationed himself by her front gate while his companion seized her purse, and fled with the thief with whom he remained until caught by the police. *Id.* at 689. This court held that this evidence, giving the government the benefit of permissible inferences, was sufficient for a juror to find that Creek's presence at the victim's gate encouraged or facilitated the robbery. *Id.* Unlike *Creek*, there is no evidence in this case from which it can be inferred that Smith's walk to the courthouse, where he was undisputedly required to be, aided and encouraged the remarks made by McGee and Evans. He simply did nothing nor said anything that would warrant this finding. That he looked at the victim is too thin a thread from which to infer his participation in the crime. According to the complainant, Smith was the furthest away from her and said nothing. It would require speculation to conclude that since he was the defendant in the case, he must have instigated the remarks.

In *Rogers v. United States*, 174 A.2d 356 (D.C.1961), also cited by the government, there was evidence of some overt involvement of the defendant, Rogers, in the crime from which it could be inferred that he was an aider and abettor in the assault of the victim. In *Rogers*, the victim was traveling home from work at 2:30 a.m. when the principal, one Herring, propositioned him. *Id.* at 357. When the victim refused him, Herring walked away momentarily only to return with Rogers and another man, who had been standing a short distance away. *Id.* Only then did Herring strike the victim with several blows and demand his money. The victim was pushed to a bench where he was searched and his money taken. Afterwards, Herring told his companions to start moving before the police came, and the three left the crime scene together and remained together until the police and the victim located them a short time later. *Id.* Significantly, the victim testified that all three men were after him. *Id.* at 358. The court held that this latter testimony formed a sufficient basis for the jury to find that Rogers associated himself with the venture as an aider and abettor, even though his actions may not have reached the level of an assault. *Id.* No similar active participation in the crime by Smith, as something he wanted to bring about, is present in this case.

▇▇▇ As the foregoing cases show, more than the accused's presence at the scene of the crime is required to prove his guilt of the offense as an aider and abettor. *See also Jefferson, supra*, 463 A.2d at 683 (citing *Quarles, supra*, 308 A.2d at 774–75). An additional requirement is that there be some proof of "conduct which designedly

dence of consciousness of guilt." *Id.* (citations omitted).

encourages or facilitates the crime [to] support an inference of guilty participation in the crime as an aider and abettor." *Id.* The accused's presence will be equated with aiding and abetting " 'when it is shown that it designedly encourages the perpetrator, facilitates the unlawful deed ... or where it stimulates others to render assistance to the criminal act.' " *Catlett v. United States,* 545 A.2d 1202, 1216 n. 30 (D.C.1988) (quoting *Settles v. United States,* 522 A.2d 348, 357 (D.C.1987)) (in turn quoting *Bailey v. United States,* 135 U.S.App.D.C. 95, 98–99, 416 F.2d 1110, 1113–14 (1969)), *cert. denied,* 488 U.S. 1017, 109 S.Ct. 814, 102 L.Ed.2d 803 (1989). There is nothing in this record to show that Smith directly or even by his presence encouraged or stimulated McGee and Evans in their efforts to intimidate the juror. The government's argument that Smith's guilt may be inferred from the evidence that Smith was watching Baxter during the encounter and that he laughed when Baxter hurried away after the incident is insufficient to permit the inference that he encouraged his companions to make the intimidating comments that form the gist of the crime. Indeed, the complainant did not testify that Smith was laughing. Nor can it be inferred reasonably that Smith was the only person who could have told Evans and McGee that Baxter had been selected as a juror in his case. There was evidence that McGee was in the courtroom after the jury was selected, although he denied looking at the jury, and McGee had seen Baxter standing in line with other prospective jurors for the case. There is no evidence that Smith approved the comments of his companions; the evidence is to the contrary. Therefore, we conclude that the evidence was insufficient to support Smith's conviction.

### III.

Appellants, Evans and McGee, make several additional arguments for reversal, none of which we find persuasive. We need to address each of them only briefly.

### A. *Challenge to Trial by Jury*

Evans and McGee argue that there was inherent prejudice in a jury trial, given the nature of the offense. They contend that neither the court nor counsel took steps to ascertain whether the jury could impartially decide an obstruction of justice charge involving a juror. Since this claim was not raised during the trial, we review for plain error. *See Brawner v. United States,* 745 A.2d 354, 357 (D.C.2000). Under that standard, " 'the error must be (1) obvious or readily apparent, and clear under current law; and (2) so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial.' " *Id.* (quoting *Coates v. United States,* 705 A.2d 1100, 1104 (D.C.1998) (in turn quoting *Hasty v. United States,* 669 A.2d 127, 134 (D.C. 1995)). Appellants can not meet that standard. The error, if any, was not obvious or plain. Appellants demanded a jury trial, to which they were entitled absent an express waiver. *See* D.C.Code § 16–705(a) (2001). They have cited no authority for the proposition that a jury can not decide a case of this type. Moreover, steps were taken to assure that the jury would not be affected by the nature of the case. Appellants' attorneys were permitted to question the venire panel. The jury was informed of the nature of the charge and questioned about whether the fact that they were now jurors would make it difficult for them to decide the case where the offense was against a woman when she was a juror. No prospective juror indicated an inability to decide such a case impartially. Absent such evidence, we find no error, and clearly no plain error.

Even assuming error, appellants may be deemed to have invited it.

They participated in the jury selection process, evincing their continued desire to have a jury trial as demanded. " '[C]ourts are especially reluctant to reverse for plain error when it is invited.' " *District of Columbia v. Banks*, 646 A.2d 972, 978 (D.C. 1994) (in turn quoting *District of Columbia v. Wical Ltd. P'ship*, 630 A.2d 174, 182–183 (D.C.1993)). No reason has been shown for this court to do so in this case.

## B. *Jury Selection Process*

■ Appellants argue that the jury selection process was flawed. They provide a number of reasons for this challenge, including that: (1) a juror gave his juror number incorrectly two times, and the court incorrectly excused the juror, having transposed the numbers; (2) the court mistakenly recalled that one juror had responded affirmatively to the *Ridley*[6] question who had not; (3) the court excused a number of jurors for hardship without adequate inquiry and left others on the panel who had potential problems or who expressed an inability to be fair and impartial; and (4) they were not at the bench while portions of the voir dire were conducted there. Appellants' first three challenges are belied by the record or were adequately addressed by the trial court.[7]

The determination of a potential juror's impartiality is within the province of the trial court, which has broad discretion in determining whether a juror should be excused for cause. *See Welch v. United States*, 466 A.2d 829, 836 (D.C.1983). Having reviewed the record, we find no abuse of discretion in the trial court's rulings during the jury selection process. Appellants have failed to show that they were deprived of a trial by an impartial jury. *See id.* (a defendant claiming denial of a trial by an impartial jury can not rely on mere speculation, but must demonstrate such deprivation).

■ Appellants' remaining challenge related to the jury trial right is that they were not present during voir dire at the bench. Appellants did not request to be present and made no objection to the procedure. Appellants' failure to request to be present or to object to exclusion "constitutes a waiver of that right and forecloses the opportunity to be heard on appeal." *Welch, supra*, 466 A.2d at 839 (footnote omitted).

## C. *Right Not to Testify*

■ Appellants, Evans and McGee, argue that the trial court erred in failing to

---

6. *United States v. Ridley*, 134 U.S.App. D.C. 79, 412 F.2d 1126 (1969).

7. *Although juror number 840 did state his number incorrectly, he was ultimately excused for cause, and the court later corrected its own misstatement of the number. While the court mistakenly thought that juror 691 had a response to the Ridley question, when the juror indicated that he did not, neither the court nor counsel posed any questions to him. Contrary to appellants' assertion that certain jurors were excused without adequate inquiry, the record shows that juror number 815 was excused at the request of Evans' counsel, without objection, because she indicated that she had a prior bad jury experience. Juror number 879 was stricken without objection because she knew one of the witnesses. Ju-* rors 553, 780, 778, and 840 were excused because they indicated that their moral and religious beliefs might interfere with their ability to be impartial. Juror 840 also indicated that personal and health problems would make service a hardship. While appellants complain that the court excused juror 919 who had airline tickets for a trip ten days away, the record shows that the court gave counsel the option of keeping him, and they acceded to excusing him. Appellants also complain that some jurors (553, 567, 856, 259, and 417) had "potential" problems, and were left in the jury pool. Appellants state that they may have been overlooked. These jurors were either stricken or were not selected, and appellants have shown no prejudice as a result of their retention in the jury pool.

conduct an inquiry of them concerning their decision to testify. They contend that the government's case against them was flawed, but they stood to be impeached if they testified.[8] They contend that since the court queried Smith when he waived his right to testify, it should have inquired of them when they informed the court that they would testify.

 A defendant has a fundamental and personal right to testify in his or her own criminal trial which only the defendant can waive. *Boyd v. United States,* 586 A.2d 670, 674 (D.C.1991). "A personal and fundamental right will be deemed waived only if there is record evidence demonstrating 'an intentional relinquishment or abandonment of a known right or privilege.'" *Id.* at 674–75 (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)). At issue in *Boyd* was whether the defendant had waived her right to testify. While not deciding whether the trial court had a duty, *sua sponte,* to conduct an inquiry of the defendant, this court stated that once the judge became aware that Boyd was asserting that she wanted to testify, it had a duty to determine whether she had made a knowing and intentional waiver of the right to testify. *Id.* at 677. Further, this court stated that while it was not holding that the trial court had a *sua sponte* obligation to inquire of a non-testifying defendant whether he wanted to waive his right to testify, it would be prudent to make an inquiry on the record to avoid the issue on appeal or in collateral attacks. *Id.* (citation omitted).

We did not address in *Boyd* whether a similar rule obtains for a testifying defendant, and we need not do so here. The record adequately discloses that appellants were aware of the right not to testify before they did so. At the close of the government's case, their attorneys indicated that they would testify, while Smith's counsel said that Smith would not testify. The court then addressed Smith, in the presence of McGee and Evans and their counsel, concerning his right to testify or not to testify and whether he had conferred with his lawyer about it. The attorneys for Evans and McGee did not request a similar inquiry concerning their clients decision to testify. We find no plain error in the trial court's failure to conduct *sua sponte* a separate inquiry of Evans and McGee to determine whether they wanted to waive their right not to testify.

### D. *Instructional Challenges*

 Evans and McGee argue that it was plain error for the trial court not to give a special cautionary instruction related to the nature of the charges after the prosecutor, in opening statement, improperly placed the jurors in the position of the complaining witness. The court sustained an objection to the remarks and admonished the prosecutor that it was improper to do so. The trial court later gave an instruction that the jury should not allow the nature of the charges to affect their verdict. We find no abuse of discretion in the trial court's corrective action, and clearly no plain error in its failure to do more *sua sponte.*

 These appellants also contend that the trial court erred in failing to give instructions on confessions, identification and the absence of flight. They did not request the instructions, nor did they respond when the court asked for objections or requests for additional instructions. Therefore, again, we review for plain error. We cannot say that the court plainly erred in failing to give the instructions. The government did not seek to admit

---

8. Evans had a prior conviction, and both had made prior inconsistent statements.

Evans' statement as substantive evidence, but rather used it to impeach him. The standard instruction that appellants argue should have been given states that it applies where the statement is used as substantive evidence. CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA No. 2.48 (4th ed.2002). The identification instruction was not essential, as the defense theory was not misidentification, but that the requisite intent was not established, and the court so instructed the jury. In any event, appellants have shown no prejudice, as they were not precluded from arguing any evidence pertaining to identification or misidentification. For their claim that the trial court should have given an "absence of flight" instruction, appellants have cited no supporting authority. However, there is authority to the contrary. *See, e.g., State v. Pettway,* 39 Conn.App. 63, 664 A.2d 1125, 1133–34 (1995) (court has no obligation to give absence of flight instruction); *State v. Jennings,* 19 Conn.App. 265, 562 A.2d 545, 548 (1989) (court's refusal to instruct on absence of flight as consciousness of innocence is consistent with the law). We cannot say that the trial court plainly erred in failing to give an instruction for which there is no authority. *See Brawner, supra,* 745 A.2d at 357 (the error must be obvious and clear under current law).

### E. *Sentencing Challenge*

 Finally, appellants argue that the sentences imposed were disproportion-

ate to the crime, and therefore amount to cruel and unusual punishment.[9] Appellate review of sentencing is extremely limited. *Williams v. United States,* 571 A.2d 212, 214 (D.C.1990). Generally, a sentence within statutory limits is not subject to review. *Walden v. United States,* 366 A.2d 1075, 1076 (D.C.1976). Here, appellants' sentences are within statutory limits; therefore, they are not reviewable on appeal except for constitutional considerations. *Greene v. United States,* 571 A.2d 218, 222 (D.C.1990) (citation omitted). We cannot say that the sentences are so disproportionate to the nature of the crime that they transgressed constitutional strictures. An endeavor to influence a juror in a pending case is a serious crime for which the legislators have provided lengthy penalties.[10] Appellants' effort to influence the juror not only intimidated her, but disrupted the administration of justice by causing a mistrial in the case. The court operated within the bounds of its discretion in imposing sentence. Therefore, we find no sentencing error.

For the foregoing reasons, the judgment of conviction of Evans and McGee are affirmed. The judgment of conviction of Smith is reversed and remanded with instructions to vacate his conviction, and the mandate in his case shall issue forthwith.

*So ordered.*

9. McGee was sentenced to not less than ten and not more than thirty years imprisonment. Evans was sentenced to not less than eleven and not more than thirty-three years. Appellants have also stated, without argument or citation to authority, that the trial court considered an improper element in sentencing. Specifically, they refer to the court's statement that the integrity of the system depends upon the court imposing a substantial sen-

tence "because people have got to know that jurors are positively off limits." Generally, an assertion of an issue without argument or authority will not be considered on appeal.

10. The penalty for obstruction of justice is imprisonment for not less than three years and not more than life and a fine of $10,000 or both. D.C.Code § 22–722(b) (2001).