KELLUM, Judge.
The appellant, Terrence Tyree Edwards, was convicted of murder, a violation of § 13A-6-2, Ala.Code 1975. The circuit court sentenced Edwards to 30 years’ imprisonment and ordered Edwards to pay $12,250 in restitution, $25 to the crime victims compensation fund, and court costs.
The record indicates the following pertinent facts. Edwards and his longtime girlfriend Nina Gardner were living together in a house with their three children in Birmingham. On January 17, 2011, Verna Gardner, Nina’s mother, picked Edwards up from his job at Birmingham Fasteners and took him to Church’s Chicken, a fast-food restaurant where he worked part-time. When Edwards’s shift at Church’s ended, he went to a friend’s house and waited for Nina to pick him up and drive him home. Verna testified that after midnight that evening, Nina telephoned her; Verna could hear Nina and Edwards loudly “arguing on the phone.” (R. 39.) Verna drove to the house and was met by Nina, who told her that she and Edwards had been arguing about “picking up” around the house. Verna helped Nina clean the house and then returned to her own house. Edwards was in the house *829 while Nina and Verna were cleaning, but he refused to acknowledge Verna ánd remained on the living-room couch for the duration of her visit.
Later that evening Verna received a telephone call from Edwards. Edwards told Verna, “Maw-maw, I need you,” but he did not tell Verna why he needed her. Verna testified that Edwards was not crying or screaming and did not sound upset when he made the telephone call. After Edwards ended the telephone call with Verna, he telephoned Chastity Gardner, Verna’s granddaughter and Nina’s niece. Chastity was living with Verna at that time, and Verna could tell something was not right while Chastity was speaking with Edwards on the telephone. When Chastity hung up the phone after speaking with Edwards, she telephoned emergency 9-1-1. The police first arrived at Verna’s house to pick her up, and Verna accompanied the police to Nina’s house. By the time Verna arrived, there were already three or four other police cars and an ambulance at the house. Verna learned that Edwards had shot Nina in the chest and that she had died from the gunshot wound.
At trial, Chastity testified that she had been babysitting Nina and Edwards’s children for a few months before Nina was killed. Chastity testified that Nina had sent her a text message on the night she was killed stating that “she was ready to leave [Edwards]” because Edwards was “making her a bad mother,” and because Edwards did not like the way Chastity was caring for the children when she was babysitting. (R. 68.) Chastity later received a text message from Edwards that said “[y]ou better know who you are fucking with,” accompanied by an “angry face.” (R. 68-69.) Chastity further testified that later that evening she received multiple telephone calls from Nina’s telephone, but that until the last call Nina never said anything. On the last call, Chastity heard Edwards say “come to me. I need you right now,” and Chastity heard “[her] auntie in the background saying ‘please, stop.’” (R. 70.) Chastity subsequently telephoned 9-1-1.
Birmingham Police Officer Ronald Brown responded to Chastity’s 9-1-1 call. Brown arrived at Edwards and Nina’s residence as a second 9-1-1 call was being placed, and Officer Brown informed dispatch he was already on the scene. As Officer Brown approached the house, he looked into a window and saw Edwards kneeling on the floor over Nina, shaking her. Officer Brown approached the door, and he was met by Edwards who said, “help my wife, help my wife,” but Nina was already dead. (R. 98.) Officer Brown testified that Edwards was handcuffed and detained in the back of a police car until the detectives and crime-scene investigators arrived at the scene.
Officer J.D. Strickland was the crime-scene investigator who collected the evidence at Edwards’s house. Officer Strickland collected a spent bullet and a Taurus brand Raging Bull .480 caliber handgun that had one shell casing in it. There was a partial fingerprint on the gun but not enough of a print for police to attempt to match the fingerprint with their records. Officer Strickland turned the gun over to Mitch Rector, the forensic-services manager for the Birmingham Police Department.
Rector testified that he inspected the handgun recovered from the scene of the crime and determined that the bullet that killed Nina had been fired from that gun. Rector then examined the clothing that Nina was wearing when she was shot. According to Rector, there was very little powder residue on the clothing, which indicated that the gun was not fired at close range. Rector then conducted a “distance estimation” test, whereby he “fired a ser *830 ies of shots from various distances” to determine how far away from Nina Edwards was when Nina was shot. (R. 196.) After conducting these tests, Rector estimated that Edwards was four to five feet away from Nina when he fired the handgun.
Dr. Gregory Davis was the pathologist with the Jefferson County Medical Examiner’s Office who conducted the autopsy on Nina. Dr. Davis testified that even though Edwards had fired only one shot, the bullet caused significant injuries. The bullet first struck Nina’s right wrist, which was resting on her right breast. The bullet then traveled into Nina’s right breast, and through her chest, where it hit her liver, heart, diaphragm, stomach, and spleen. The bullet subsequently exited to the rear of her left armpit. When the bullet exited Nina’s chest, it struck her left arm, leaving a bruise. Dr. Davis testified that he did not see powder markings on Nina’s body or clothing to suggest that the gunshot wound was a contact wound, or that the gun was fired from either close or intermediate range.
Birmingham Police Detective Henry Lucas interviewed Edwards after the shooting. Detective Lucas testified that he informed Edwards of his Miranda[1] rights, and, after waiving those rights, Edwards gave the following statement, as summarized by Detective Lucas:
“[Detective Lucas]: [Edwards] basically stated that they was at the house. They had words. [Nina] came into the kitchen with the gun in her hands. [Edwards] stated that — [s]he said if you fuck with me — you fuck me, you’re stuck with me. [Nina] had the gun cradled in her hand somehow. [Edwards] snatched the gun. The gun went off and shot [Nina].
“[Prosecutor]: Did he ever say that Nina pointed the gun at him?
“[Detective Lucas]: No, he did not.”
(R. 171.)
Edwards testified in his own defense and provided a description of the incident that contradicted the forensic evidence presented by the State. Edwards testified that he and Nina agreed to purchase the handgun because their house was in a bad neighborhood. Edwards stated that he did not know where Nina kept the handgun and that they had an agreement that the handgun was to remain unloaded because they had young children in the house.
According to Edwards, Nina picked him up from a friend’s house after his shift was over at Church’s. When they arrived home, Edwards told Nina they needed a new babysitter and that Chastity was not fit to continue in that capacity because she was inattentive and had burned one of the children with a cigarette. Nina argued with Edwards, stating that Chastity needed the money she got from babysitting. Eventually, Verna came to the house because of the argument, but at that point Edwards had decided he was going to go stay at his mother’s house.
When Edwards told Nina he intended to leave, Nina told him, “[he] wasn’t going nowhere.” (R. 264.) Edwards testified that when he went to the laundry room to put on his coat, Nina appeared with the gun in her hand. According to Edwards, Nina was “angry. She was real angry. She had a gun in her hand. She told [him]: T told you, you fuck me, you stuck with me. You think I’m playing with you.’” (R. 266.) Edwards testified that he then reached for the handgun, and as he and Nina struggled over the handgun, *831 the handgun discharged and Nina was shot.
Edwards testified that after Nina was shot, he telephoned Verna and Chastity to ask for help. Edwards then telephoned the police, and, after giving them his address, Edwards hung up the telephone. When the police arrived, Edwards was cooperative. Edwards testified that the shooting was an accident and that he never intended to cause Nina’s death.
On cross-examination, the State asked Edwards a number of questions about his and Nina’s positions during the struggle over the gun. The State pointed out that Nina was right-handed, so it would have been impossible for Nina to be shot in her right hand if she was holding the gun in her right hand, leading to the following exchange:
“[Prosecutor]: We heard testimony from the medical examiner that that bullet hit Nina first through her right wrist. Were you here for that?
“[Edwards]: Yes, ma’am.
“[Prosecutor]: How was Nina’s right hand on that gun when that trigger was pulled if the gun — if the bullet first entered her body—
“[Edwards]: Uh-huh.
“[Prosecutor]: — through her right wrist? How does that happen?
“[Edwards]: If you’re struggling over the gun, ma’am. The gun can be pointed any kind of way.
“[Prosecutor]: That’s true, but we’ve agreed, haven’t we that if the bullet hit Nina from that gun, the gun was pointed at Nina? Yes?
“[Edwards]: We were arguing. I was trying to leave. I was trying to leave.
[[Image here]]
“[Prosecutor]: Let’s agree on this. That bullet came out of the gun. It did not hit you?
“[Edwards]: No, ma’am.
“[Prosecutor]: It did not hit the wall?
“[Edwards]: No, ma’am.
“[Prosecutor]: It did not hit the ceiling?
“[Edwards]: No, ma’am.
“[Prosecutor]: It hit Nina?
“[Edwards]: Yes, ma’am.
“[Prosecutor]: Through her wrist?
“[Edwards]: Yes, ma’am.”
(R. 286-87.)
Edwards’s case was tried before a jury. After both sides had rested and the court had instructed the jury on the applicable principles of law, the jury found Edwards guilty of murder. This appeal followed.
I.
Edwards contends that the circuit court abused its discretion when it denied his written requested jury charge on “consciousness of innocence.” Specifically, Edwards argues that because he did not flee the scene after he shot Nina, he was entitled to an instruction on “consciousness of innocence,” and the circuit court’s failure to give this instruction was reversible error because the instruction was a correct statement of the law. Edwards further asserts that because the State can request an instruction on consciousness of guilt when a defendant does flee, the circuit court’s failure to provide an instruction on “consciousness of innocence” when Edwards did not flee violated Edwards’s right to equal protection under the Fifth and Fourteenth Amendments to the United States Constitution.
The record indicates that Edwards requested the following instruction be given to the jury:
“I charge you ladies and gentlemen of the jury that consciousness of innocence may be inferred by the jury from the actions of the defendant immediately after the shooting occurred. Did he stay *832 at the scene? Did he call for aid? Did he cooperate with law enforcement officials? All of these things may infer consciousness of innocence, and as triers of the facts this is at the sole discretion of the jury to determine.”
(C. 70.) This requested instruction led to the following exchange between the circuit court and defense counsel:
“THE COURT: Over the evening we had some requested charges come in. We’ll start with Mr. Tindle’s. His requested charge is consciousness of innocence, I guess, is the best way to describe it, Mr. Tindle.
“[Defense counsel]: Judge, I believe it’s got to be equal justice. When a defendant flees the scene of a shooting, the State gets a charge on flight being consciousness of guilt, okay? When a defendant stays at a scene of the shooting, calls for aid, cooperates with the police, these are things that show consciousness of innocence. It should be equality in the charges and I charge you, ladies and gentlemen of the jury, that consciousness of innocence may, may be inferred by the jury from the actions of the defendant immediately after the shooting occurred, one, did he stay at the scene, did he call for aid, did he cooperate with law enforcement officials? All of these type of things may infer consciousness of innocence. As triers of the fact, this is at the sole discretion of the jury to determine them.
“THE COURT: Mr. Tindle, do you have a case that cites this?
[[Image here]]
“THE COURT: My question, not that you can — does this come from a case? Not have you used it before. I mean, you’re right, this sounds like the exact opposite of the — I guess you could say exact opposite, but it’s the working of the flight charge. But the flight charge is one that’s recognized by law of the State of Alabama. While I see absolutely nothing that would prohibit you from arguing this, my question is, is this a correct statement of the law?
“[Defense counsel]: Ma’am, if it is not, I intend to make it caselaw somewhere down through the point, because there’s got to be equality in the law.
“THE COURT: Well, I disagree that this is an equality argument. You know, I’ve been around for an awful long time. Since 1980. And then ’83 after law school. There have been hundreds of cases where the defendants have cooperated, and this is the first time that I have ever been presented with a charge of this nature.”
(R. 805-07.)
“A trial court has broad discretion in formulating its jury instructions, providing they are an accurate reflection of the law and facts of the case.” Coon v. State, 494 So.2d 184 (Ala.Crim.App.1986). “ ‘When requested charges are either fairly and substantially covered by the trial judge’s oral charge or are confusing, misleading, ungrammatical, not predicated on a consideration of the evidence, argumentative, abstract, or a misstatement of the law, the trial judge may properly refuse to give such charges.’” Ward v. State, 610 So.2d 1190, 1194 (Ala.Crim.App.1992) (quoting Ex parte Wilhite, 485 So.2d 787 (Ala.1986)).
Edwards argues that the circuit court should have provided the jury with his requested instruction on “consciousness of innocence” because, he says, it was not a misstatement of the law and it was supported by the facts. This Court recently rejected an argument similar to Edwards’s in Albarran v. State, 96 So.3d 131 (Ala.Crim.App.2011). In Albarran, this Court reviewed the circuit court’s refusal to give the following instruction:
*833 “The absence of flight of a person or the failure of a person to attempt to evade the police immediately after the commission of the acts leading to an arrest, if the person had the opportunity to flee, is a matter to consider in light of all the circumstances, in deciding whether or not the defendant’s guilt has been proven beyond a reasonable doubt.”
Albarran, 96 So.3d at 192. This Court recognized that Alabama appellate courts have never specifically addressed whether a defendant was entitled to an instruction on “absence of flight,” and looked to other jurisdictions for guidance on the issue.
This Court determined that the reasoning in Commonwealth v. Hanford, 937 A.2d 1094 (Pa.Super.2007), should apply in this situation, and adopted the following holding:
“ ‘While a “flight” instruction, whereby a jury may infer consciousness of guilt from an attempt to flee, is well established in this Commonwealth, see Pa. S.S.J.I. (Crim) 3.14; Commonwealth v. Bruce, 717 A.2d 1033 (Pa.Super.1998), appeal denied, 568 Pa. 643, 794 A.2d 359 (1999), there is no authority for a corresponding but inverse “absence of flight” instruction. Indeed, Appellant cites no authority for his notion. Other states that have addressed the issue, however, have uniformly rejected it. See e.g. Smith v. U.S., 837 A.2d 87, 100 (D.C.2003), cert. denied, 541 U.S. 1081, 124 S.Ct. 2435, 158 L.Ed.2d 996 (2004); People v. Williams, 55 Cal.App.4th 648, 64 Cal.Rptr.2d 203, 205 (1997); State v. Pettway, 39 Conn.App. 63, 664 A.2d 1125, 1134 (1995), appeal denied, 235 Conn. 921, 665 A.2d 908 (1995); State v. Walton, 159 Ariz. 571, 769 P.2d 1017, 1030 (1989), affirmed, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990); State v. Mayberry, 411 N.W.2d 677, 684 (Iowa 1987).
[[Image here]]
“ ‘[T]he “absence of flight” instruction is unnecessary because, from the outset, an individual is presumed innocent until proven guilty and the jury is so instructed. Pa. S.S.J.I. (Crim) 7.01. Because the defendant is already “clothed with a presumption of innocence,” [Commonwealth v.] Collins, [810 A.2d 698 (Pa.Super.2002) ] at 701 (citing Commonwealth v. Bishop, 472 Pa. 485, 372 A.2d 794, 796 (1977)), the jury need not be additionally charged on an inference of innocence where a suspect does not flee.’ ”
Albarran, 96 So.3d at 192-93 (quoting Hanford, 937 A.2d at 1097-98). After adopting this holding, this Court determined that Albarran was not entitled to an absence-of-flight instruction because “the absence of flight is not a theory of defense from which... an inference of innocence may be drawn by the jury.” Albarran, 96 So.3d at 193.
In the instant case, Edwards attempts to distinguish his argument from the argument made in Albarran, stating that “the facts at hand in Mr.. Edwards’s case are clearly distinguishable from the facts presented in Albarran, and, as such, demonstrated Mr. Edwards’s need for the instruction under his theory of the defense.” (Edwards’s brief, p. 24.) Although the facts of Albarran are distinguishable from the instant case, the legal principles that this Court identified in Albarran^-namely that “an individual is presumed innocent until proven guilty,” and that “the absence of flight is not a theory of defense from which... an inference of innocence may be drawn by the jury” — are applicable in Edwards’s case just as they were in Al-barran. Albarran, 96 So.3d at 192-93. Because Edwards’s requested jury instruction was predicated on an improper understanding of Alabama law, the circuit court did not abuse its discretion when it refused to provide a “consciousness of innocence” jury instruction.
*834 Moreover, even if this Court were willing to agree with Edwards that there is a distinction between the “absence of flight” instruction rejected in Albarran and the “consciousness of innocence” instruction rejected here, this Court adopts the reasoning of Commonwealth v. Thomas, 54 A.3d 332 (Pa.2012), a case that expanded the holding of Hanford in determining that a defendant is not entitled to the exact instruction Edwards now requests. In Thomas, the defendant asked for an instruction on “consciousness of innocence” in order “to make sure the playing field is equal.” Thomas, 54 A.3d at 342. The Pennsylvania trial court denied Thomas’s request, ruling that the instruction was not supported by “prevailing law nor the facts of the case.” 54 A.3d at 342. The Pennsylvania Supreme Court affirmed the judgment of the trial court, ruling that Thomas was not entitled to a “consciousness of innocence” instruction. Specifically, the Pennsylvania Supreme Court explained:
“The question of a ‘consciousness of innocence’ jury instruction has not been previously addressed by this Court. However, the Superior Court has considered and rejected a similar instruction, an ‘absence of flight’ instruction. See Commonwealth v. Hanford, 937 A.2d 1094, 1097-98 (Pa.Super.2007). In Hanford, the defendant claimed that the trial court had erred by denying his request for an ‘absence of flight’ instruction, pursuant to which the trial court would instruct the jury that it could infer innocence from the defendant’s failure to flee the scene of his alleged offense or to attempt to elude capture by the police. Recognizing the issue as one of first impression in Pennsylvania, the Superior Court panel held that the defendant-appellant’s claim was merit-less. Id. at 1097-98. The panel reasoned that a suspect’s failure to attempt to avoid the police was ‘open to multiple interpretations, many of which have little to do with consciousness of guilt, [but] could actually reflect a strategic choice.’ Id. at 1097. In addition, the panel concluded that an ‘absence of flight’ instruction was unnecessary because a defendant is presumed innocent until proven guilty and the jury is so instructed; therefore, the jury need not be additionally charged on an inference of innocence from the failure to flee from police. Id. at 1097-98.
“Many other jurisdictions have reached conclusions similar to that of our Superior Court in Hanford. For example, the Connecticut Appellate Court has consistently declined to require a consciousness of innocence instruction based on a defendant’s voluntary surrender to police or failure to flee from police. In State v. Timmons, 7 Conn.App. 457, 509 A.2d 64, 70 (1986), the defendant had sought a consciousness of innocence instruction based on his voluntary surrender to police. In rejecting the defendant-appellant’s claim, the appellate court held as follows:
“ ‘The surrender of an accused is a factual argument that may properly be made to a jury in summation of the evidence. It is not a theory of defense from which, as a matter of law, an inference of innocence may be drawn by the jury. This court has been unable to find any authority allowing an instruction permitting the jury to infer innocence from surrender after flight.’
[[Image here]]
“Other jurisdictions have considered the issue of a consciousness of innocence instruction, and uniformly have concluded that a defendant is not entitled to such an instruction. See e.g., Hanford, 937 A.2d at 1097 (listing cases in which the issue of a consciousness of innocence *835 instruction has been addressed and rejected); [State v.] Jennings, 562 A.2d [545,] at 549 n. 3 [ (Conn.App.1989) ] (same); Smith v. U.S., 837 A.2d 87, 100 (D.C.2003)(eoncluding that the trial court did not err in refusing to give an absence of flight instruction because legal authority did not support, but rather refuted, such an instruction); State v. Sorensen, 104 Ariz. 503, 455 P.2d 981, 987 (1969)(discerning no prejudice to the defendant in the trial court’s refusal to give an instruction as to absence of flight, and concluding that the matter is ‘more properly one of argument’).
“We are persuaded by the reasoning of the courts in our sister states, as well as our own Superior Court, and, accordingly, we decline to hold that a consciousness of innocence jury instruction would have been proper here. The matter is properly one of argument to the jury.”
Thomas, 54 A.3d at 341-43.
In the instant case, this Court finds the reasoning of the Pennsylvania Supreme Court compelling. As that Court noted, a defendant is already accorded a presumption of innocence, and a defendant’s “failure to attempt to avoid the police” is “open to multiple interpretations, many of which have little to do with consciousness of guilt.” Thomas, 54 A.3d at 341. While Edwards was free to argue that his cooperation with police and other first responders indicated his innocence, Edwards was not, as a matter of law, entitled to a jury instruction on “consciousness of innocence.”
Edwards further argues:
“Due Process under the Equal Protection Clause of the Fourteenth Amendment commands that Mr. Edwards should have been entitled to [a ‘consciousness of innocence’] instruction due to the fact that the State of Alabama would have been entitled to the inverse instruction on flight had Mr. Edwards left the scene of the shooting.”
(Edwards’s brief, p. 25.) This argument is without merit because it misunderstands the protection afforded by the Equal Pro: tection Clause of the Fourteenth Amendment. The Fourteenth Amendment Equal Protection Clause guarantees that no state will “deny any person within its jurisdiction the equal protection of the laws.” “The basic tenet of the equal protection clause is not that all persons must be treated equally, but rather that all persons similarly situated must be treated equally.” Smith v. State, 518 So.2d 174, 176 (Ala.Crim.App.1987). “ ‘The equal protection clause does not mean that a state may not draw lines that treat one class of individuals differently from others. The test is whether the difference in treatment is an invidious discrimination.’ ” Craig v. State, 410 So.2d 449, 454 (Ala.Crim.App.1981) (quoting Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356, 93 S.Ct. 1001, 35 L.Ed.2d 351 (1973)).
Here, Edwards cannot show that there was selectivity in enforcement or that the circuit court’s failure to provide a “consciousness of innocence” instruction was some form of invidious discrimination. All defendants in Alabama are similarly treated; no defendant in Alabama is entitled to an instruction on “consciousness of innocence.” No defendant is entitled to an instruction on “consciousness of innocence” because, as discussed above, such an instruction is an incorrect statement of Alabama law. That the State may request the inverse instruction has no bearing on Edwards’s rights under the Equal Protection Clause, because the Courts of Alabama have long recognized that an instruction stating that evidence of flight is admissible to show consciousness of guilt is a correct statement of Alabama law. See, e.g., Sinkfield v. State, 669 So.2d *836 1026, 1028 (Ala.Crim.App.1995). Because Edwards’s requested jury charge was an incorrect statement of Alabama law, no criminal defendant would be entitled to such an instruction. Therefore, Edwards cannot show intentional selectivity in the denial of his requested jury charge, and Edwards has not demonstrated a violation of his rights under the Equal Protection Clause. Accordingly, no basis for reversal regarding this issue exists.
II.
Edwards next contends that the circuit court erred in denying his motion for a judgment of acquittal because the State failed to prove all elements necessary to support his murder conviction. Specifically, Edwards argues that the State failed to prove he intended to murder Nina and that the evidence demonstrated only that a “tragic accident occurred on the night of January 18, 2011.” (Edwards’s brief, p. 25.)
“ ‘ “In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution.” ’ Ballenger v. State, 720 So.2d 1033, 1034 (Ala.Crim.App.1998), quoting Faircloth v. State, 471 So.2d 485, 488 (Ala.Crim.App.1984), aff'd, 471 So.2d 493 (Ala.1985). ‘ “The test used in determining the sufficiency of evidence to sustain a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational finder of fact could have found the defendant guilty beyond a reasonable doubt.” ’ Nunn v. State, 697 So.2d 497, 498 (Ala.Crim.App.1997), quoting O’Neal v. State, 602 So.2d 462, 464 (Ala.Crim.App.1992). ‘ “When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit [the case] to the jury, and, in such a case, this court will not disturb the trial court’s decision.” ’ Farrior v. State, 728 So.2d 691, 696 (Ala.Crim.App.1998), quoting Ward v. State, 557 So.2d 848, 850 (Ala.Crim.App.1990). ‘The role of appellate courts is not to say what the facts are. Our role ... is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury.’ Ex parte Bankston, 358 So.2d 1040, 1042 (Ala.1978).
“‘The trial court’s denial of a motion for judgment of acquittal must be reviewed by determining whether there was legal evidence before the jury at the time the motion was made from which the jury by fair inference could find the defendant guilty. Thomas v. State, 363 So.2d 1020 (Ala.Cr.App.1978). In applying this standard, this court will determine only if legal evidence was presented from which the jury could have found the defendant guilty beyond a reasonable doubt. Willis v. State, 447 So.2d 199 (Ala.Cr.App.1983). When the evidence raises questions of fact for the jury and such evidence, if believed, is sufficient to sustain a conviction, the denial of a motion for judgment of acquittal does not constitute error. McConnell v. State, 429 So.2d 662 (Ala.Cr.App.1983).’ ”
Gavin v. State, 891 So.2d 907, 974 (Ala.Crim.App.2003), cert. denied, 891 So.2d 998 (Ala.2004) (quoting Ward v. State, 610 So.2d 1190, 1191 (Ala.Crim.App.1992)).
““‘Circumstantial evidence alone is enough to support a guilty verdict of the most heinous crime, provided the jury believes beyond a reasonable doubt that the accused is guilty.” White v. State, 294 Ala. 265, 272, 314 So.2d 857 (Ala.1975), cert. denied, 423 U.S. 951, 96 S.Ct. 373, 46 L.Ed.2d 288 (1975). “Cir *837 cumstantial evidence is in nowise considered inferior evidence and is entitled to the same weight as direct evidence provided it points to the guilt of the accused.” Cochran v. State, 500 So.2d 1161, 1177 (Ala.Crim.App.1984), affirmed in pertinent part, reversed in part on other grounds, Ex parte Cochran, 500 So.2d 1179 (Ala.1985).’ ”
Hollaway v. State, 979 So.2d 839, 843 (Ala.Crim.App.2007) (quoting White v. State, 546 So.2d 1014, 1017 (Ala.Crim.App.1989)).
“ ‘In reviewing a conviction based on circumstantial evidence, this court must view that evidence in the light most favorable to the prosecution. The test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude. United States v. Black, 497 F.2d 1039 (5th Cir.1974); United States v. McGlamory, 441 F.2d 130 (5th Cir.1971); Clark v. United States, 293 F.2d 445 (5th Cir.1961).’”
Bradford v. State, 948 So.2d 574, 578-79 (Ala.Crim.App.2006) (quoting Cumbo v. State, 368 So.2d 871, 874-75 (Ala.Crim.App.1978)).
A person commits the offense of murder if, “[wjith intent to cause the death of another person, he or she causes the death of that person or of another person.” § 13A-6-2(a)(1), Ala.Code 1975. In a prosecution for murder, the intent of the defendant “must be inferred by the jury from a due consideration of all of the material evidence.” Rivers v. State, 624 So.2d 211, 213 (Ala.Crim.App.1993).
Contrary to Edwards’s assertion, the State presented sufficient evidence from which the jury could infer that he murdered Nina. Chastity testified that she received a text message from Nina that indicated Nina was ready to leave Edwards. Shortly after, Chastity received a threatening message from Edwards. Chastity further testified that while she was on the telephone with Edwards, she could hear Nina in the background saying, “please, stop.” (R. 70.)
Although Edwards claimed that the shooting was an accident — the result of a struggle over the handgun Nina was holding — forensic evidence cast doubt on Edwards’s version of events. A distance estimate placed the muzzle of the handgun between four and five feet from Nina when it was fired, and Nina, who was right handed, was shot in her right wrist, which indicates that she was not holding the gun in her hand at the time she and Edwards were struggling. Because Edwards shot Nina with a handgun, the jury could have readily concluded that Edwards intended to kill Nina when he pulled the trigger.
To the extent that Edwards argues that the State’s evidence conflicted with his version of the events on the night of January 18, 2011, “conflicting evidence presents a jury question which is not subject to review on appeal.” Barnes v. State, 571 So.2d 372, 374 (Ala.Crim.App.1990) (citing Willis v. State, 447 So.2d 199, 201 (Ala.Crim.App.1983)). “ ‘The weight of the evidence, and the credibility of the witnesses, and inferences to be drawn from the evidence, where susceptible of more than one rational conclusion, are for the jury alone.’ ” Turrentine v. State, 574 So.2d 1006, 1009 (Ala.Crim.App.1990) (quoting Walker v. State, 416 So.2d 1083, 1089 (Ala.Crim.App.1982)). Although conflicts in the evidence existed, the State’s evidence, when considered as a whole, could have permitted the jury to reasonably infer that *838 Edwards murdered Nina. The jury weighed the evidence and found Edwards guilty. It is not this Court’s responsibility to reweigh the evidence. Gavin, 891 So.2d at 974. Accordingly, no basis for reversal exists regarding this issue.
Based on the foregoing, the judgment of the circuit court is affirmed.
AFFIRMED.
WINDOM, P.J., and WELCH, BURKE, and JOINER, JJ., concur.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).