## COMMONWEALTH of Pennsylvania, Appellee

v.

## Jason HANFORD, Appellant.

Superior Court of Pennsylvania.

Argued June 27, 2007.

Filed Nov. 26, 2007.

Thomas P. Sundmaker, Stroudsburg, for appellant.

Michael Rakaczewski, Asst. Dist. Atty., Stroudsburg, for the Com., appellee.

BEFORE: TODD, GANTMAN and KELLY, JJ.

OPINION BY KELLY, J.:

¶ 1 Appellant, Jason Hanford, appeals from the judgment of sentence of 8½ to 17 years' imprisonment entered in the Court of Common Pleas of Monroe County following his jury conviction of rape, involuntary deviate sexual intercourse, sexual assault, aggravated indecent assault, and unlawful restraint.[1] The central issue on appeal is whether the trial court erred in allowing the Commonwealth to introduce an undisclosed, recorded conversation between Appellant, who was incarcerated, and a defense witness, for the purpose of impeaching the credibility of the witness. We find that, because the failure to disclose this evidence was highly prejudicial, it should not have been admitted. Accordingly, we reverse and remand for a new trial. We also find merit in one of the other two errors cited by Appellant: namely that the factual allegations contained in a civil complaint filed by the complainant against a defense witness were improperly excluded. We find no merit in Appellant's assertion that the trial court should have given an "absence of flight" instruction to the jury, an issue of first impression in this Commonwealth.

¶ 2 The charges against Appellant stem from an incident on June 21, 2004, in which he allegedly raped the complainant at a hotel in Stroudsburg, Monroe County, Pennsylvania. He and the complainant were co-workers who had agreed to share a hotel room temporarily while they each looked for permanent housing. After having spent the day drinking and socializing, they returned to their room. The complainant alleged that when she refused Appellant's sexual overtures, he first became violently agitated, then forcibly raped[2] and repeatedly struck her in the face, neck, legs, and back, tearing out clumps of her hair during the attack. Appellant pleaded not guilty to all charges, and trial commenced on September 8, 2005.

¶ 3 Approximately one year prior to trial, the Commonwealth, through a sealed court order, had obtained a recording of a telephone conversation that Appellant, while incarcerated, had with a woman who would later appear as a defense witness. Appellant was unaware that the Commonwealth possessed such a recording, and was not provided with a copy despite a specific discovery request for "any transcripts and recordings of any electronic surveillance." (Appellant's Brief at 4).

¶ 4 Appellant's appeal to this Court cites three errors by the trial court. First, Appellant challenges the trial court's decision to allow the Commonwealth to introduce the recorded conversation as rebuttal evidence to impeach the credibility of the witness heard on the recording. He also assigns error to the trial court's denial of his request to use, in his questioning of a defense witness, a civil complaint filed by the complainant against the witness. Appellant's final claim of error is the refusal of his request for an "absence of flight" jury instruction, which would allow an in-

---

1. 18 Pa.C.S.A § 3121(a)(1); § 3123(a)(1); § 3124.1; § 3125(a)(1); § 2902(a)(1).

2. Photographic evidence obtained during a pelvic examination of the complainant at the hospital after the rape showed a vaginal tear and internal bruising as well as external signs of physical abuse.

ference of innocence because he did not flee the scene. We have reordered Appellant's claims for ease of resolution.

## I. "Absence of flight" jury instruction

¶ 5 Appellant argues that because he did not attempt to flee between the time the complainant called police and when they actually arrived at the hotel, he was entitled to an "absence of flight" jury instruction. According to Appellant, the jury should be permitted to infer his innocence because he did not attempt to elude capture. We disagree.

¶ 6 Our standard of review for the trial court's instructions to a jury is well established. "When reviewing a challenge to part of a jury instruction, we must review the jury charge as a whole to determine if it is fair and complete." *Commonwealth v. Einhorn*, 911 A.2d 960, 975 (Pa.Super.2006), *appeal denied*, 591 Pa. 723, 920 A.2d 831 (2007). Reversible error occurs "[o]nly where there is an abuse of discretion or an inaccurate statement of the law." *Commonwealth v. Collins*, 810 A.2d 698, 700 (Pa.Super.2002) (citing *Commonwealth v. Myers*, 722 A.2d 1074, 1076 (Pa.Super.1998), *appeal denied*, 559 Pa. 702, 740 A.2d 231 (1999)).

¶ 7 This issue is apparently one of first impression in Pennsylvania. While a "flight" instruction, whereby a jury may infer consciousness of guilt from an attempt to flee, is well established in this Commonwealth, *see* Pa.S.S.J.I. (Crim) 3.14; *Commonwealth v. Bruce*, 717 A.2d 1033 (Pa.Super.1998), *appeal denied*, 568 Pa. 643, 794 A.2d 359 (1999), there is no authority for a corresponding but inverse "absence of flight" instruction. Indeed, Appellant cites no authority for his notion. Other states that have addressed the issue, however, have uniformly rejected it. *See e.g. Smith v. U.S.*, 837 A.2d 87, 100 (D.C. 2003), *cert. denied*, 541 U.S. 1081, 124 S.Ct.

2435, 158 L.Ed.2d 996 (2004); *People v. Williams*, 55 Cal.App.4th 648, 64 Cal. Rptr.2d 203, 205 (1997); *State v. Pettway*, 39 Conn.App. 63, 664 A.2d 1125, 1134 (1995), *appeal denied*, 235 Conn. 921, 665 A.2d 908 (1995); *State v. Walton*, 159 Ariz. 571, 769 P.2d 1017, 1030 (1989), *affirmed*, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990); *State v. Mayberry*, 411 N.W.2d 677, 684 (Iowa 1987).

¶ 8 The most salient argument against the "absence of flight" instruction is that, unlike an attempt to flee, the fact that a suspect did not try to avoid the police is open to multiple interpretations, many of which have little to do with consciousness of guilt, and which could actually reflect a strategic choice. As the trial court noted, "[T]he individual may be unaware that he is a suspect in a pending investigation; he may believe that he is more likely to be perceived as innocent of the crimes charged if he refrains from hiding; or perhaps he may not want to make a bad situation worse." (Trial Ct. Op. at 16). While an affirmative action such as flight is usually performed for a reason that can be determined upon investigation, inaction does not lend itself to so tidy an inquiry. The conclusion that Appellant's innocence may be inferred from the fact that he did not try to elude police is a logical leap of deductive reasoning that this Court cannot endorse.

¶ 9 Furthermore, the "absence of flight" instruction is unnecessary because, from the outset, an individual is presumed innocent until proven guilty and the jury is so instructed. Pa.S.S.J.I. (Crim) 7.01. Because the defendant is already "clothed with a presumption of innocence," *Collins, supra* at 701 (citing *Commonwealth v. Bishop*, 472 Pa. 485, 372 A.2d 794, 796 (1977)), the jury need not be additionally charged on an inference of innocence

where a suspect does not flee. Accordingly, we find no merit in Appellant's claim.

## II. Exclusion of civil complaint from evidence

¶ 10 Appellant also argues that the trial court erred when it denied his request to question a defense witness regarding a civil complaint filed against the witness by the complainant. She had sued the witness, who employed both her and Appellant at the time of the alleged rape, for creating an unsafe working environment by having hired Appellant, a convicted felon. (N.T., 9/9/05, at 97). Appellant contends that the trial court incorrectly excluded the factual allegations contained in the complaint as hearsay on grounds that the complainant's lawyer rather than the complainant herself had verified it. We are compelled to agree with Appellant.

■ ¶ 11 The standard of review for a trial court's evidentiary rulings is narrow. "The admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion." *Commonwealth v. Carter*, 861 A.2d 957, 961 (Pa.Super.2004) (quoting *Commonwealth v. Herb*, 852 A.2d 356, 363 (Pa.Super.2004)), *appeal granted*, 583 Pa. 678, 877 A.2d 459 (2005). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Id.*

¶ 12 The admissibility of hearsay is addressed in rules 801, 802, and 803 of the Pennsylvania Rules of Evidence. Rule 801(c) defines hearsay as "a statement . . . offered in evidence to prove the truth of the matter asserted." Hearsay evidence is inadmissible under Rule 802. Rule 803, however, identifies a number of exceptions to the prohibition; 803(25) specifically exempts from the hearsay rule "statement[s] offered against a party," where the statement is (A) "the party's own statement in either an individual or representative capacity," or is made (C) "by a person authorized by the party to make a statement concerning the subject." The latter is most germane here.

¶ 13 The statements in the complaint were verified by the complainant's attorney. Where such statements appear in documents "filed in accordance with local court rules, **in the case at issue,** [they] are classified as 'judicial admissions.' " Binder, David, BINDER ON EVIDENCE, § 8.03 (4th ed. 2005) (emphasis original). In fact, the complaint states that the complainant authorized the attorney to verify it on her behalf, and as required by Pa.R.C.P. 76, the complaint was verified subject to the penalties of 18 Pa.C.S.A. § 4904, pertaining to unsworn falsification to authorities. Because the complaint was filed with the Court of Common Pleas of Monroe County, it qualifies as a judicial admission which "when offered in evidence, is conclusive. It estops the party from denying or contradicting the assertion." *Id.* Judicial admissions are both unequivocal and limited to "factual matters otherwise requiring evidentiary proof." *John B. Conomos, Inc. v. Sun Co., Inc.*, 831 A.2d 696, 713 (Pa.Super.2003), *appeal denied*, 577 Pa. 697, 845 A.2d 818 (2004).

■ ¶ 14 On appeal, Appellant has advanced two purposes for introducing the complaint: to show bias stemming from the complainant's interest in the outcome of the criminal case, and to demonstrate disparities between her factual allegations at trial and in the complaint.[3] We find

---

3. At trial, Appellant argued for introduction of the civil complaint solely on the basis of the

that, in the first instance, the exclusion of the facts alleged in the civil complaint was not reversible error because they were unnecessary to establish bias. The specific details of a lawsuit filed by a complainant are irrelevant to establishing the complainant's bias or motive. *Commonwealth v. Constant*, 925 A.2d 810, 819 (Pa.Super.2007). While the trial court excluded the particular facts alleged in the civil complaint, it did allow Appellant to question the witness regarding the existence of the civil suit and the grounds on which the complainant was suing him. This was sufficient to show the complainant's possible bias and interest in the outcome of the case. *See id.* Accordingly, the trial court did not err to the extent that it permitted introduction of the existence of the civil suit.

¶ 15 However, the civil suit's factual allegations were also admissible as a hearsay exception under Pa.R.E. 803(25)(C). The question then becomes whether the disparities between the facts in the complaint and those elicited from the complainant at trial were substantial enough to constitute impeachment evidence. Although "[t]he credibility of a party as a witness may be impeached by proof of the party's pleadings in another case where such pleadings are contradictory and inconsistent with the party's testimony," *Std. Pa. Prac.2d* § 54:148, dissimilarities and omissions in prior statements "must be substantial enough to cast doubt on a witness' testimony to be admissible as prior inconsistent statements." *McManamon v. Washko*, 906 A.2d 1259, 1268 (Pa.Super.2006), *appeal denied*, 591 Pa. 736, 921 A.2d 497 (2007) (quoting *Commonwealth v. Bailey*, 322 Pa.Super. 249, 469 A.2d 604, 611 (1983)).

¶ 16 The averments of the civil complaint, which was attached as an exhibit to Appellant's Post Trial Motion for Extraordinary Relief, differed from complainant's testimony on three points: the genesis of the room-sharing arrangement between the complainant and Appellant; the reason for Appellant's agitated behavior prior to the alleged rape;[4] and the degree to which the complainant was aware of Appellant's criminal history. Although one of these, the etiology of Appellant's agitation, was not necessarily substantial enough to warrant admission of the facts contained in the civil complaint as evidence of prior inconsistent statements by the complainant, the remaining claims certainly are: the allegation that her employer suggested Appellant and the complainant share accommodation, in conjunction with the complainant's putative ignorance of Appellant's past and the employer's knowledge of that past, provide the theoretical basis for the suit. In contrast, at trial the complainant made no mention of the employer in reference to the room-sharing arrangement, and also admitted to knowledge of Appel-

---

disparity between the factual allegations of the complaint and the complainant's version of the criminal incident. On appeal, Appellant introduced the bias rationale for the first time. Although new theories ordinarily cannot be raised for the first time on appeal, *Commonwealth v. McCandless*, 880 A.2d 1262, 1268 (Pa.Super.2005), *appeal granted*, 586 Pa. 464, 895 A.2d 518 (2006) (citing *Commonwealth v. Baker*, 556 Pa. 427, 728 A.2d 952, 953 (1999)), we nonetheless address and reject the bias claim given our disposition of Appellant's properly preserved argument.

4. At trial, the complainant described Appellant's violence as having been occasioned by his frustration when the plan for a living arrangement different than the one arranged with the complainant failed to materialize; the civil complaint explains that Appellant was allowed to use the room only while the complainant was away, and that he became enraged when, on the complainant's return, she demanded that he vacate the room.

lant's criminal history. Therefore, we find that the trial court's decision to exclude the factual averments of civil suit was error.[5]

### III. Use of recordings

■ ¶ 17 Appellant also argues that the last-minute admission into evidence of his telephone conversation with a defense witness, recorded while he was in jail prior to trial, violated his right to due process. During the call, the witness told Appellant that she believed he had beaten the complainant, but was not sure that he had raped her. When, on the second day of trial, the witness under cross-examination denied having made the statement, the Commonwealth revealed its possession of the recording, and made the court aware of its intention to introduce the tape in order to impeach the witness' credibility. Appellant had no access to the tape until later that day, after the conclusion of the contradictory testimony. Because he was not given sufficient notice of the existence of the recording, nor an opportunity to review it prior to trial, Appellant maintains that the trial court committed reversible error in allowing it into evidence. We agree.

¶ 18 Pa.R.Crim.P. 573(B)(1) provides:

(1) In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

(a) Any evidence favorable to the accused that is material either to guilt or to punishment, and is within the possession or control of the attorney for the Commonwealth.

* * *

(f) any tangible objects, including documents, photographs, fingerprints, or other tangible evidence; and

(g) the transcripts and recordings of any electronic surveillance, and the authority by which the said transcripts and recordings were obtained.

¶ 19 Rule 573 applies equally to evidence used as part of the case in chief and evidence used in rebuttal against defense witnesses. *Commonwealth v. Thiel*, 323 Pa.Super. 92, 470 A.2d 145, 148 (1983).[6] The Rule implements the overall policy of the discovery rules aimed at preventing "trial by ambush" and the use of "last minute disclosures" to try cases, *Commonwealth v. Shelton*, 536 Pa. 559, 640 A.2d 892, 895 (1994), as such tactics have been declared fundamentally unfair. *Commonwealth v. Moose*, 529 Pa. 218, 602 A.2d 1265, 1274 (1992).

¶ 20 In *Commonwealth v. Ulen*, 539 Pa. 51, 650 A.2d 416, 418 (1994), the trial court permitted the prosecution to enter into

---

5. We note, however, that where the admission has been denied in a defensive pleading, it does not constitute a judicial admission. *General Equipment v. Westfield Insurance Co.*, 430 Pa.Super. 526, 635 A.2d 173, 181 (1993), *appeal denied*, 537 Pa. 663, 644 A.2d 1200 (1994). Because no testimony on the matter was taken beyond that related to the mere existence of the suit, the admissibility of the factual averments in the complaint *qua* defensive denial was never explored.

6. *Thiel* and other cases decided prior to 2000 interpreted a previous iteration of Rule 573, which was then Rule 305. Rule 305 was renumbered and amended in 2000. The two versions are essentially identical for the purposes of this case.

evidence a tape recording tending to impeach the credibility of a defense witness, but which had not been turned over to the defense during pre-trial discovery. In a unanimous decision, our Supreme Court awarded the appellant a new trial, finding that "the Commonwealth's failure to disclose possible impeachment or rebuttal evidence may highly prejudice the defendant's case and lead to reversible error when the evidence is sprung on the defendant unawares." *Id.* (quoting *Thiel, supra* at 148).

■ ¶ 21 The pertinent question when determining whether the Commonwealth acted improperly when it fails to disclose evidence is whether it could reasonably have predicted possible defense strategies. *Thiel, supra* at 148. If it could, then the prosecutor will be "held to reasonable anticipation of what evidence in his possession might be material." *Id.* In rape cases, where witness credibility is of paramount importance, the prosecution reasonably should know that the issue of apparent truthfulness could determine the outcome. Thus, witness credibility is of "critical importance"; indeed, "a jury's appraisal of a person's credibility can weigh heavily in its final verdict." *Commonwealth v. Jenkins,* 476 Pa. 467, 383 A.2d 195, 196 (1978). Because this is so, when the reliability of a witness may be determinative of the outcome, evidence affecting the credibility of that witness must be disclosed. *Giglio v. U.S.,* 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

¶ 22 The Commonwealth and the trial court have advanced several identical rationales for the proposition that introduction of the recording, if error at all, is harmless. The first of their joint analyses rests on the factor at which the Commonwealth points to distinguish this case from *Ulen* and the others cited above: that both Appellant and the witness to whom he was speaking knew or should have known that they were being recorded. The Commonwealth and the Court refer us to the fact that prisoners and those whom they call from prison are advised that their calls are being recorded by an announcement which also contains instructions on use of the prison telephone system.

¶ 23 However, an appellant's due process rights are violated and his right to a fair trial infringed whenever he is not given all of the discoverable material evidence in advance of trial, regardless of his particular knowledge. Moreover, despite the unsupported assertion by the Commonwealth and the court that Rule 573 "pertains to material which is obtained through electronic surveillance where the party in question does not know that they [sic] are being recorded," (Commonwealth's Brief at 5), we know of no recognized exception to the mandatory disclosure rule based on the knowledge of those involved.

¶ 24 As a coda to this argument, and equally without support, the Commonwealth also advances the astonishing theory that "[w]here the defendant is aware of the material in question the test for discovery changes back from one of mandatory disclosure to whether the evidence is material, inculpatory, exculpatory or forms a confession." (*Id.* at 6). That is, the defendant's knowledge somehow transmutes Rule 573 into *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Neither the Commonwealth nor the court provides any authority at all for this inventive proposition, although the trial court attempts to do so by finding noteworthy the Commonwealth's petition for *allocatur* in *Commonwealth v. Ford,* 905 A.2d 1042 (Pa.Super.2006) (unpublished memorandum), which presents a factual scenario, from the same county, remarkably similar to this one, and as well, presents prosecution arguments presaging those advanced

here. However, our Supreme Court recently denied allowance of appeal in that case. *See Commonwealth v. Ford,* 591 Pa. 660, 916 A.2d 631 (2007).[7]

¶ 25 The Commonwealth and the court advance the shared conclusion that the tapes were properly admitted because there was no intention to ambush Appellant, and because the use of the recording was not planned or calculated to surprise. They contend that only the witness's contradictory testimony precipitated introduction of the recording. Intent is not relevant to this inquiry, however, as evidence is subject to disclosure if it is "material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady, supra* at 87, 83 S.Ct. 1194. Moreover, the Commonwealth's reasoning is circular: the prosecution would not have known that the witness was being untruthful absent the recordings. Although the Commonwealth designates the untruthfulness of the witness as the impetus behind its use of the tape, non-disclosure to Appellant of evidence in its possession is the very factor which enabled the prosecution to utilize the evidence so effectively. The *Ulen* Court specifically refused such attempts to "have it both ways." *Id.* at 419.

¶ 26 Further elaborating on its original contention that mandatory disclosure of evidence is a function of the defendant's ignorance, the Commonwealth applies the same precondition to *Brady* violations, referring us to *Commonwealth v. Johnson,* 580 Pa. 594, 863 A.2d 423 (2004). In that case our Supreme Court found no infringement of *Brady* "where the appellant knew or could have uncovered the evidence at issue with reasonable diligence." *Id.* at 426. The argument fails in part, however, because while *Brady* informs an element of our analysis, this case represents a frontal collision with Rule 573, which requires disclosure of **all** material evidence; *Brady* makes compulsory disclosure only of exculpatory evidence. *See Commonwealth v. Treiber,* 582 Pa. 646, 874 A.2d 26, 33 (2005). Moreover, even if that were not the case, Appellant's initial discovery request for all transcripts and recordings of electronic surveillance satisfies the *Johnson* "reasonable diligence" requirement, but because the Commonwealth obtained the prison recording under a sealed court order, Appellant was not even aware that the prosecution had acquired it.[8]

¶ 27 In this same regard, the Commonwealth also maintains that nondisclosure was proper because the recording was not expected to have any impact at trial.[9] However, this contention ignores the probability that the defense might reconsider its strategy in light of the recorded conversation. *Ulen* reached the same conclusion: "Defense counsel's mere knowledge that the prosecution has the evidence most assuredly would give pause to the use of that witness as well as provide reasonable grounds for a reconsideration of trial strategy." *Id.* If Appellant had known that the Commonwealth possessed the recording, he might not have called the witness to testify, or might have changed his line of questioning.

---

7. We note that at oral argument the Commonwealth conceded the denial of its petition for allowance of appeal.

8. The Commonwealth's other *Brady* argument, that in order to constitute a *Brady* violation there must be a reasonable probability that the result would have been different had

the evidence been disclosed, fails for the same reason.

9. If this were the case, the question becomes why the Commonwealth sought a sealed order and refused a clear request for material of this type.

¶ 28 Finally, the trial court defends its admission of the evidence by asserting that "the uncontradicted evidence of [Appellant's] guilt in this matter was so overwhelming that any such error should be deemed insignificant in comparison." (Trial Ct. Op., at 12). We are unpersuaded. In *Commonwealth v. Story,* 476 Pa. 391, 383 A.2d 155, 162 (1978), our Supreme Court established the standard for harmless error as that which an appellate court finds beyond a reasonable doubt could not have contributed to the verdict. Here the Commonwealth's use of highly charged adverse evidence is not, as the trial court would have us believe, insignificant, either as a matter of procedural or substantive prejudice. As a result, we cannot dismiss the evidence as having had no effect on Appellant's conviction.

¶ 29 For the foregoing reasons, judgment of sentence is vacated and the case remanded for proceedings consistent with this opinion. Jurisdiction is relinquished.

¶ 30 TODD, J. notes her dissent.