J-S34022-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                  :         PENNSYLVANIA
                                                  :
              v.                          :
                                                  :
                                                  :
JOHN WAYNE STRAWSER, JR.     : 
                                                  :
           Appellant                :    No. 1429 MDA 2019

Appeal from the Judgment of Sentence Entered August 6, 2019
In the Court of Common Pleas of Franklin County Criminal Division at
No(s):  CP-28-CR-0002234-2017

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:         **FILED OCTOBER 19, 2020**

Appellant, John Wayne Strawser, Jr., appeals from the judgment of sentence of life imprisonment without the possibility of parole, imposed after a jury found him guilty of first-degree murder.  Appellant challenges the admission of prior bad acts ("PBA") evidence related to his arrest and conviction in another murder investigation.  After careful review, we affirm.

On January 4, 2014, the victim, Timothy Davison, was driving north on I-81 from Maryland to Pennsylvania, when he called 911 and reported that he was being pursued by a dark-colored Ford Ranger pickup truck,[1] and that shots were being fired at his vehicle.  While still on the phone with the dispatcher, Davison reported that his vehicle had been forced off the road by

---

[1] GPS evidence established that Davison's vehicle reached speeds in excess of 100 m.p.h. during the chase.

the Ford Ranger. His last words were, "Dude, he's here." Immediately after that statement, gunshots could be heard on the recording.[2]

A Maryland State Police officer, the first to respond to the scene, located Davison's vehicle on the southbound median of I-81. He observed that the driver's side window was shattered, and the door was riddled with bullet holes. Davison was slumped over in the driver's seat, with bullet wounds to his head, hand, and leg. Davison died from his injuries.

Pennsylvania State Police ("PSP") arrived soon thereafter and collected ballistic evidence from the scene, including shell casings from outside the vehicle, several bullet fragments, and a bullet found in the vehicle; additional bullets were later recovered from Davison's body. Examination of Davison's vehicle indicated that it had been struck by a vehicle with blue paint. Due to snowy conditions, PSP Trooper Jason Cachara returned several days later, after the snow had melted. At that time, he discovered a Ford Ranger badge at the scene of the crime. Analysis of the ballistic evidence revealed that the bullets had been fired from a .44 caliber firearm. This evidence was consistent with a relatively unique type of firearm known as a .44 caliber Rossi Ranch Hand. Investigators were also able to collect a DNA sample from the shell casings.

However, despite receiving 671 potential leads, Trooper Cachara testified that the case remained unsolved for some time. Then, on April 20,

---

[2] The audio from the 911 call was played for the jury.

2015, Trooper Cachara received a call from Jamie Breese, who told the trooper that Appellant had killed a woman, Amy Buckingham, in Preston County, West Virginia. When Trooper Cachara interviewed Jamie Breese and his wife, Courtney Breese, they indicated that they had a strange interaction with Appellant on the evening of the murder of Davison. Courtney Breese told Trooper Cachara that she knew Appellant since childhood, and that she was in a romantic relationship with him in January of 2014. On the date of Davison's murder, Appellant contacted Courtney on her cellphone while she was driving with Jamie and began verbally abusing her. When Jamie took the phone from Courtney, Appellant threatened to kill him the next time they met.

Trooper Cachara travelled to West Virginia to investigate Appellant, and learned that a .44 caliber Rossi Ranch Hand had been recovered from the scene of the murder of Amy Buckingham, and that a box for the firearm and ammunition for the weapon were found in Appellant's home. They also discovered that Appellant owned a blue Ford Ranger pickup truck that had been painted over with black paint. The interior of the truck on the driver's side tested positive for gunshot residue. However, investigators were able to determine that the vehicle had not been used in the murder of Amy Buckingham. DNA recovered from Appellant could not be excluded as a match to the DNA recovered from the shell casings discovered at the scene in this case. Additionally, data recovered from Appellant's cell phone indicated that he had been in the area of the Davison shooting on the date in question.

Furthermore, the Commonwealth's expert testified that Appellant's .44 caliber Rossi Ranch Hand was the weapon used in the Davison killing.

Prior to trial, Appellant filed an omnibus pre-trial motion seeking, *inter alia*, the exclusion of any PBA evidence concerning the murder of Amy Buckingham. A hearing on that motion occurred on March 12, 2019. On June 11, 2019, the trial court issued an opinion and order granting in part, and denying in part, Appellant's omnibus pre-trial motion. Relevant here, the court determined that evidence of Appellant's conviction for the murder of Amy Buckingham was not admissible, but that evidence concerning the investigation into that crime was admissible.

Appellant's jury trial began on July 29, 2019, and concluded on August 5, 2019, after which the jury convicted Appellant of first-degree murder. The trial court immediately sentenced him to a mandatory term of life imprisonment without the possibility of parole, set to run consecutively to the sentence he was serving in the Amy Buckingham case. He did not file any post-sentence motions. He filed a timely notice of appeal, and a timely, court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued its Rule 1925(a) opinion on October 23, 2019. The trial court's Rule 1925(a) opinion largely incorporated its June 11, 2019 opinion.

Appellant now presents the following questions for our review:

1. Whether allowing the admission into evidence of [Appellant]'s prior arrest for first[-]degree murder, and the subsequent police investigation, was an abuse of discretion by the [t]rial [c]ourt[,] where [it] ruled that [Appellant]'s prior conviction for [f]irst[-d]egree [m]urder of Amy Buckingham was inadmissible but

permitted multiple witnesses to testify to the murder of Amy Buckingham and the ongoing police investigation involving [Appellant], as the admission of such evidence was highly prejudicial under Pa.R.E. 403?

2. Whether allowing [Appellant]'s prior arrest for first[-]degree murder, and the subsequent police investigation, was an abuse of discretion by the [t]rial [c]ourt[,] where [it] ruled that [Appellant]'s prior conviction for [f]irst[-d]egree [m]urder of Amy Buckingham was inadmissible but permitted multiple witnesses to testify to the murder of Amy Buckingham and the ongoing police investigation involving [Appellant] constituted improper character evidence under Pa.R.E. 404?

Appellant's Brief at 4-5.[3]

Appellant's claims are interrelated and, thus, we address them together. Essentially, Appellant argues that the trial court erred by permitting the admission of PBA evidence related to the murder of Amy Buckingham, evidence which he claims was not admissible pursuant to Pa.R.E. 403 and 404.

The standard of review for a trial court's evidentiary rulings is narrow. The admissibility of evidence is solely within the discretion of the trial court and will be reversed only if the trial court has abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

***Commonwealth v. Hanford***, 937 A.2d 1094, 1098 (Pa. Super. 2007) (cleaned up).

Rule 403 provides that a trial court "may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following:

---

[3] Appellant presents two more questions for our review in his statement of the questions involved. However, in the argument section of his brief, Appellant withdraws those claims. ***See*** Appellant's Brief at 23-24.

unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403. Rule 404(b) prohibits the admission of evidence "of a crime, wrong, or other act" intended to "prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). However, such "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b)(2).

This is not an exhaustive list. "Our Supreme Court has consistently recognized that admission of distinct crimes may be proper where it is part of the history or natural development of the case, *i.e.*, the *res gestae* exception." ***Commonwealth v. Brown***, 52 A.3d 320, 326 (Pa. Super. 2012). Nevertheless, Rule 404(b)(2) provides—implicitly incorporating the logic of Rule 403—that even when an exception to the general ban applies, "evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(2).

Here, the trial court determined that

there was no intelligible way for the Commonwealth to present its narrative without introduction of the evidence linking [Appellant] to the murder of Amy Buckingham. The investigation into Timothy Davison's murder had reached an impasse that was only broken when Jamie Breese learned of [Appellant]'s arrest for the murder of Amy Buckingham. The causal link was formed in Jamie Breese's mind when [Appellant] was arrested for Amy Buckingham's murder, so the arrest is an integral part of the natural chain of events for the instant trial and forms part of "the whole story" that

is allowed under the *res gestae* exception to the general rule against the introduction of prior bad acts. This [c]ourt also found that [Appellant]'s conviction for the murder of Amy Buckingham is not an integral part of the natural chain of events and that evidence of his conviction is not crucial for the whole story to be told to the fact finder in [Appellant]'s trial. The Commonwealth conceded that Amy Buckingham's murder did not constitute a course of conduct and did not arise from the same circumstances or events. It is only the nexus between [Appellant]'s arrest for Amy Buckingham's murder and Jamie Breese's realization that he and his wife were in a heated argument with [Appellant] on the same date as Timothy Davison's murder that was relevant.

Under the *res gestae* analysis, this [c]ourt ordered the suppression of [Appellant]'s conviction for the murder of Amy Buckingham at trial. However, this [c]ourt also ordered that all relevant evidence regarding Courtney and Jamie Breese's interaction with [Appellant] on January 3-4, 2014[,] and the fact that [Appellant] was arrested for the murder of Amy Buckingham[,] would be allowed at trial in order to provide the fact finder with "the whole story" regarding the origin of the investigation into the murder of Timothy Davison on January 4, 2014.

Trial Court Opinion, 10/23/19, at 4-5 (footnote omitted).

Appellant first argues that the PBA evidence concerning Amy Buckingham's murder was inadmissible under the identity exception to the general ban set forth in Rule 404, relying on **Commonwealth v. Weakley**, 972 A.2d 1182 (Pa. Super. 2009). **See** Appellant's Brief at 10-14. However, it is clear that, in the case *sub judice*, the trial court relied primarily on the *res gestae* exception. With respect to that exception, Appellant argues that his conviction for the murder of Amy Buckingham

is not part of the natural development of facts regarding the murder of Tim Davison. First, Tim Davison's death occurred over one year before the death of Amy … Buckingham; [Appellant]'s conviction occurred a year later. Both the death and conviction occurred after Tim Davison's death, so it was not part of the series

- 7 -

of events leading up to Tim Davison's death. Thus, there is not a temporal nexus between [Appellant]'s involvement in Ms. Buckingham's death and the death of Tim Davison. [Appellant]'s conviction does not "form part of the natural development of facts" as required for its admission as the two crimes are unrelated. While the police investigations may have overlapped, the law requires the actual[] crimes themselves have a connection.

Appellant's Brief at 19-20.

Appellant's argument is off-point. The trial court indicated that it deemed evidence of Appellant's **conviction** inadmissible, and Appellant fails to direct this Court's attention to where in the record the trial court permitted evidence of that conviction to be heard by the jury.

Indeed, as noted by the Commonwealth, Appellant fails to identify where evidence regarding Amy Buckingham's murder was presented to the jury. **See** Commonwealth's Brief at 12. Nowhere in his brief does Appellant indicate where, in the voluminous trial transcripts, that the PBA evidence in question was admitted, much less which witness testified to the PBA evidence, or what specific references to Amy Buckingham's murder were made. We are compelled, therefore, to find both of Appellant's claims waived. **See** Pa.R.A.P. 2119(c) (stating that if "reference is made to the pleadings, evidence, charge, opinion or order, or any other matter appearing in the record, *the argument must set forth, in immediate connection therewith, or in a footnote thereto, a reference to the place in the record where the matter referred to appears*") (emphasis added). "It is not this Court's responsibility to comb through the record seeking the factual underpinnings of an appellant's claim." **Commonwealth v. Samuel**, 102 A.3d 1001, 1005 (Pa. Super. 2014)

(finding waived Samuel's claim for failure to adequately develop his various claims by, *inter alia*, failing to direct the Court's attention to where in the record the issue arose).

In any event, had Appellant not waived these claims, we would deem them meritless. As noted above, Appellant's argument primarily alleges that evidence of his conviction was admitted, but there is nothing in our review of the record that indicates that such evidence was admitted, and the trial court granted Appellant's pre-trial motion, in part, deeming any evidence of Appellant's conviction inadmissible.

With regard to the references to Appellant's arrest for the murder of Amy Buckingham, and references to that investigation, Appellant's argument fails to acknowledge the trial court's instruction to the jury, which was as follows:

> In this trial[,] you have heard from several witnesses regarding the investigation of [Appellant] and his being charged with the murder of Amy Buckingham in West Virginia. He is not on trial here in Franklin County for that offense.
>
> This evidence is before you for a very limited purpose. That is for the purpose of tending to show why the Pennsylvania investigation became focused on [Appellant] after the police were contacted by Jamie and Courtney Breese. This evidence must not be considered by you in any other way than for the purpose I just stated. You must not regard this evidence as showing [Appellant] is a person of bad character or criminal tendencies from which you might be inclined to infer guilt.

N.T. (Day 7), 8/6/19, at 66-67.

Appellant presents no argument as to why this instruction was inadequate to cure or mitigate any potential prejudice arising from the PBA

evidence, and he did not object to the instruction as inadequate at trial. Indeed, Appellant's counsel indicated that the trial court had already incorporated the defense's modification to that specific instruction when the court asked for any objections to the jury charge. *Id.* at 79.

We note that "the jury is presumed to follow the court's instructions." *Commonwealth v. Tedford*, 960 A.2d 1, 37 (Pa. 2008). Given that presumption, and the fact that Appellant fails to assert in his brief that the instruction was inadequate, we deem his claims under Rules 403 and 404 to be meritless. PBA evidence concerning the murder of Amy Buckingham was integral to explaining to the jury how the investigation into Davison's murder turned to focus on Appellant, consistent with the purposes of the *res gestae* exception. While both Rules 403 and 404 also require that the probative value of such evidence exceeds its potential for undue prejudice, we find that any such prejudice was adequately mitigated by the court's instruction, as Appellant fails to present any argument to the contrary. Thus, we would ascertain no abuse of discretion on the part of the trial court, even had Appellant not waived his claims.

Judgment of sentence **affirmed**.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/19/2020