J-S12020-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TRAVIS WAYNE CHINERY | : | |
| | : | |
| Appellant | : | No. 1005 MDA 2022 |

Appeal from the Judgment of Sentence Entered February 28, 2022
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0002550-2021

BEFORE:   KUNSELMAN, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY McCAFFERY, J.:          **FILED: OCTOBER 6, 2023**

Travis Wayne Chinery (Appellant) appeals from the judgment of sentence entered in the York County Court of Common Pleas, following his jury convictions of, *inter alia*, driving under the influence (DUI) of the highest rate of alcohol and marijuana.[1]  Appellant's attorney, Garrison Crow, Esquire

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S. § 3802(a)(1) (general impairment), (c) (highest rate of alcohol), (d)(1)(i) (marijuana), (iii) (metabolite).  Each of Appellant's four DUI counts were his third offense.

Appellant was also found guilty by the trial court of the summary offense of restriction on alcoholic beverages.  ***See*** 75 Pa.C.S. § 3809(a) (operator of motor vehicle may not be in possession of an open alcoholic beverage container).

(Counsel), has filed an **Anders**[2] brief and petition to withdraw from representation. He raises two issues: (1) the Commonwealth's alleged delayed disclosure of a police report; and (2) the sufficiency of the evidence. We grant Counsel's petition to withdraw from representation and affirm the judgment of sentence.

## I. Facts

We summarize the following undisputed evidence presented at trial. Gregory Buchman testified that on October 9, 2020, around 8:30 to 8:45 a.m., he was working at a stone yard in York County, and he approached a car that was parked on the property. N.T. Criminal Jury Trial, 1/20-21/22 (N.T. Trial), at 130-31. The driver, who was Appellant, was sleeping. *Id.* at 131. The car engine was running, the driver's window was open three to four inches, and the radio music "was blaring." *Id.* at 131. Buchman rapped on the window, and then the windshield, in an unsuccessful attempt to rouse Appellant. *Id.* at 132. Buchman put his hand through the open window to "nudge his head," and Appellant woke up. *Id.* Buchman described Appellant as "[e]xtraordinarily groggy," and Appellant opened his eyes very slowly, sat up, and put on his seatbelt, all "in extremely slow motion." *Id.* at 132. Buchman

---

[2] *See **Anders v. California***, 386 U.S. 738 (1967); ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009). We note Appellant was represented at trial by two assistant public defenders, Brittney Zeller, Esquire, and Matthew Sembach, Esquire. His appellate counsel is also a member of the Public Defender's Office.

informed Appellant he had called for an ambulance, but Appellant slowly put the car in gear and drove away. *Id.* at 132-34.

At this juncture, we summarize the affidavit of probable cause, supporting the criminal complaint, stated that Pennsylvania State Trooper Steven Galbraith was dispatched to respond to a call at 8:46 a.m., and that he made contact with Appellant at his residence at 9:22 a.m. Affidavit of Probable Cause, 10/9/20, at 1.

At trial, Pennsylvania State Trooper Steven Galbraith similarly testified he was dispatched at 8:46 a.m. to respond to a call about Appellant, but before the trooper arrived, he received information the driver "had fled." N.T. Trial at 145. Trooper Galbraith ran the car's registration and learned the registered owner was Appellant. *Id.* at 145-46. Trooper Galbraith additionally testified, however, that he first arrived at Appellant's home at 9:04 a.m.[3] *See id.* at 146, 163. Appellant was not home, and the trooper talked with Appellant's father. *See id.* at 163. The trooper then left and attempted to locate Appellant. *Id.* at 164. At 9:22, however, the trooper returned to the home and met with Appellant, who was now there. *See id.* at 146, 164.

Trooper Galbraith described Appellant as having slurred, "thick and slow" speech and having an odor of alcohol on his person and breath. N.T.

---

[3] Appellant lived approximately six miles from the stone yard where he had parked. N.T. Trial at 146.

- 3 -

Trial at 152. The Commonwealth played a video taken from Trooper Galbraith's dash cam video recorder, which showed Appellant telling the trooper he returned home approximately 30 seconds before the trooper arrived. *Id.* at 155. Appellant initially stated he did not drink alcohol after 9:00 p.m., then stated he had two shots of whiskey around 11:30 p.m., but ultimately denied he had any alcohol. *Id.* at 152-53. Appellant also stated he pulled his car over at 2:00 a.m. because he was tired. *Id.* at 148, 150. Finally, we note Trooper Michael Graybill testified he also responded to Appellant's home, and he observed a "three-quarters empty" bottle of Jack Daniels in Appellant's vehicle. *Id.* at 169, 172-73.

Trooper Galbraith placed Appellant under arrest for DUI, and Appellant consented to a blood draw, which was taken at 10:27 a.m. N.T. Trial at 156-57. The parties stipulated the blood test revealed a blood alcohol content (BAC) of 0.202%. Order, 1/13/22, at 2. The test also revealed the presence of marijuana. *See* N.T. Trial at 158.

## II. Trial & Disclosure of CAD Report

The DUI charges against Appellant proceeded to a jury trial on January 20, 2022. Pertinent to the issues on appeal, defense counsel's opening statement argued the following: (1) Appellant arrived home "20 minutes before the police came to his door, not 30 seconds as he initially told them[;]" and (2) during those 20 minutes, Appellant drank and smoked. *See* N.T. Trial at 95. Appellant's defense would thus be that he was not intoxicated when

he drove his car, and instead, he drank and smoked after he arrived home. *See id.* at 95, 113. The proceedings then concluded for the day.

The next day, Appellant informed the trial court that at 5:30 p.m. the previous day, the Commonwealth provided, for the first time, a police Computer Aided Dispatch (CAD) report, which would show Appellant was not at home at 9:04 a.m. (the first time Trooper Galbraith went to his home).[4] *See* N.T. Trial at 108, 120. This evidence, in turn, would contradict defense counsel's opening argument and anticipated defense — that Appellant was drinking at home just before his encounter with the state trooper. *See id.* at 102, 108, 113.

Appellant argued the Commonwealth should have disclosed the CAD report during pre-trial discovery, and the late disclosure — after opening arguments at trial — was a "trial by ambush." *See* N.T. Trial at 109-10. Appellant averred the CAD report was relevant to show the timeline of "when he was actually driving" and when the State Troopers arrived on the call. *Id.* at 114. Appellant claimed the Commonwealth's failure to provide the CAD

_____

[4] Trooper Galbraith explained a CAD report shows the precise time an officer is en route to responding to a call, arrives on scene, and, if applicable "go[es] anywhere else during that call[ or] run[s] a driver's license[.]" N.T. Trial at 102.

report was a violation of **Brady**,[5] as well as Pa.R.Crim.P. 573(D) (continuing duty to disclose)[6] and warranted a mistrial. *See id.* at 106

The Commonwealth responded it cannot "anticipate every plausible or possible defense," it was not aware until the day prior that Appellant would raise this defense, and it immediately disclosed the CAD report. N.T. Trial at 105, 107. The Commonwealth further contended **Brady** requires the disclosure of evidence that is exculpatory or favorable to the defense, but here, the CAD report was not favorable to Appellant's defense. *Id.* at 106. Finally, the Commonwealth stated it would not introduce the CAD report in its case in chief, but if the defense were to open the door to this evidence, the Commonwealth would introduce it in rebuttal. *Id.* at 101, 104.

The trial court agreed with the Commonwealth the CAD report was not exculpatory, reasoning the evidence would not "put reasonable doubt into the trier of fact's mind as to [Appellant's] culpability." N.T. Trial at 119. The court thus denied Appellant's request for a mistrial. *See id.* at 127-28.

---

[5] **Brady v. Maryland**, 373 U.S. 83 (1963). A **Brady** violation claim avers: the Commonwealth suppressed evidence, either willfully or inadvertently, that was favorable to the accused, either because it was exculpatory or impeaching, and prejudice ensued. **Commonwealth v. Natividad**, 200 A.3d 11, 25-26 (Pa. 2019).

[6] Rule 573(D) provides: "If, prior to or during trial, either party discovers additional evidence or material previously requested or ordered to be disclosed by it . . . such party shall promptly notify the opposing party or the court of the additional evidence . . . ." Pa.R.Crim.P. 573(D).

The Commonwealth then presented the testimony of Buchman and Troopers Galbraith and Graybill, as summarized above. Appellant did not testify in his own defense, but called his father, who testified, *inter alia*, that he did **not** see Appellant drink alcohol or smoke marijuana when he arrived home that morning. N.T. Trial at 214.

The jury found Appellant guilty of four counts of DUI: incapable of safe driving, highest rate of alcohol (0.16% or above), marijuana, and metabolite of marijuana. As noted above, this was Appellant's third offense of both DUI/highest rate of alcohol and DUI/marijuana. Appellant was also found guilty by the trial court of the summary offense of restriction on alcoholic beverages.

On February 28, 2022, the trial court imposed a sentence of 7 years' restrictive probation, with the first six months to be served in York County Prison, followed by six months' electronically monitored house arrest.

Appellant filed a timely post-sentence motion, which was denied on June 13, 2022. He took this timely appeal, and present Counsel filed a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal, raising claims of court error.

### III. *Anders* Petition to Withdraw

On appeal, Counsel has now filed with this Court an ***Anders*** brief and petition to withdraw. Appellant has not filed any *pro se* or counseled response.

"This Court must first pass upon counsel's petition to withdraw before reviewing the merits of the underlying issues[.]" ***Commonwealth v. Orellana***, 86 A.3d 877, 879 (Pa. Super. 2014). To withdraw pursuant to ***Anders***, counsel must:

> (1) petition the court for leave to withdraw stating that after making a conscientious examination of the record and interviewing the defendant, counsel has determined the appeal would be frivolous, (2) file a brief referring to any issues in the record of arguable merit, and (3) furnish a copy of the brief to defendant and advise him of his right to retain new counsel or to raise any additional points that he deems worthy of the court's attention. . . .

***Commonwealth v. Burwell***, 42 A.3d 1077, 1083 (Pa. Super. 2012) (citation omitted). In addition, pursuant to ***Santiago***, counsel's brief must:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Commonwealth v. Schmidt***, 165 A.3d 1002, 1006 (Pa. Super. 2017), *quoting* ***Santiago***, 978 A.2d at 361. If this Court determines that counsel has satisfied the technical requirements of ***Anders*** and ***Santiago***, we then conduct an independent review of the record to discern if there are non-frivolous issues. ***Schmidt***, 165 A.3d at 1006 (citation omitted).

- 8 -

First, we determine Counsel has complied with the technical requirements of **Anders** and **Santiago**. His petition to withdraw averred he: (1) undertook a "conscientious examination of the entire record, including all notes of testimony;" (2) has determined that a direct appeal would be frivolous; and (3) provided a copy of the **Anders** brief to Appellant, and advised him he may retain new counsel or raise any additional points to this Court. Counsel's Petition to Withdraw as Counsel, 4/14/23, at 1-2 (unpaginated). Counsel attached copies of two letters sent to Appellant, which advised him Counsel could not identify any issues of arguable merit and therefore would file an **Anders** petition to withdraw from representation. These letters did advise Appellant he could file a *pro se* response or retain private counsel.

In the **Anders** brief, Counsel presents two issues:

I.  Whether the Commonwealth's delayed disclosure of a police report prejudiced [Appellant] and resulted in an unfair trial when the report directly contradicted assertions made in trial counsel's opening statements?

II. Whether there was sufficient evidence to convict [Appellant] of DUI where he was not pulled over in his vehicle while intoxicated?

**Anders** Brief at 5. Counsel reviews the relevant law for each issue and sets forth his reasoning why they would be frivolous. **See id.** at 14-22.

Accordingly, we now independently review the record to discern if there are non-frivolous issues. **See Schmidt**, 165 A.3d at 1006.

## IV. Disclosure of Police CAD Report

The first issue raised in the ***Anders*** brief is whether the Commonwealth's "delayed" disclosure of the CAD report caused prejudice and an unfair trial, where "the report directly contradicted assertions made [in] trial counsel's opening statements[.]" ***Anders*** Brief at 14. The issue is not whether the Commonwealth withheld exculpatory evidence,[7] but rather whether the timing of the disclosure "severely damaged trial counsel's credibility." ***Id.*** at 16-17. Counsel cites case authority that "ambushing defense counsel with" previously undisclosed impeachment evidence may cause an unfair trial. ***Id.*** at 15, *citing* ***Commonwealth v. Galloway***, 771 A.2d 65, 68 (Pa. Super. 2001). Counsel also avers, "Discovery decisions predating the enactment of liberalized Rule [573] recognize that the Commonwealth's failure to disclose possible impeachment or rebuttal evidence may highly prejudice the defendant's case and lead to reversible error when the evidence is sprung on the defendant unawares." ***Anders*** Brief at 15, *quoting* ***Commonwealth v. Thiel***, 470 A.2d 145, 149 (Pa. Super. 1983). Counsel maintains, contrary to the trial court's finding, there was a discovery violation, but suggests, however, the issue is ultimately without merit, as: (1) there was no evidence presented that Appellant consumed

---

[7] We note Counsel does not present any discussion of a ***Brady*** violation.

alcohol or marijuana after he arrived home;[8] (2) defense counsel's opening statement was therefore not belied by the CAD report; and thus (3) Appellant did not suffer any prejudice. *Id.* at 17-18. We agree that no relief would be due.

As stated above, the trial court denied Appellant's motion for a mistrial based on this alleged discovery violation. We consider the applicable standard of review:

> In criminal trials, declaration of a mistrial serves to eliminate the negative effect wrought upon a defendant when prejudicial elements are injected into the case or otherwise discovered at trial. . . . [T]he trial court is vested with discretion to grant a mistrial whenever the alleged prejudicial event may reasonably be said to deprive the defendant of a fair and impartial trial. . . . Our review of the resulting order is constrained to determining whether the court abused its discretion.

*Commonwealth v. Leaner*, 202 A.3d 749, 778 (Pa. Super. 2019) (citation omitted).

Pennsylvania Criminal Rule 573 governs pretrial discovery, and its purpose is to prevent "trial by ambush." *Commonwealth v. Lynch*, 242 A.3d 339, 350 (Pa. Super. 2020). Subsection 573(B)(1), which addresses mandatory disclosures by the Commonwealth, provides, in pertinent part:

> . . . In all court cases, on request by the defendant . . . the Commonwealth shall disclose to the defendant's attorney all of the

---

[8] In fact, Counsel points out, Appellant's father testified he did not see Appellant consume any alcohol or drugs that morning. *Anders* Brief at 18, *citing* N.T. Trial at 214.

- 11 -

following requested items or information, provided they are material to the instant case. . . .

> (a) Any evidence favorable to the accused that is material either to guilt or to punishment, and is within the possession or control of the attorney for the Commonwealth[.]

Pa.R.Crim.P. 573(B)(1)(a). Subsection 573(D) pertains to the Commonwealth's continuing duty to disclose:

> If, prior to or during trial, either party discovers additional evidence or material previously requested or ordered to be disclosed by it, which is subject to discovery or inspection under this rule, . . . such party shall promptly notify the opposing party or the court of the additional evidence, material, or witness.

Pa.R.Crim.P. 573(D).

> This Court has explained:
>
> Rule 573 applies equally to evidence used as part of the case in chief and evidence used in rebuttal against defense witnesses. [*Thiel*, 470 A.2d at 148.] The Rule implements the overall policy of the discovery rules aimed at preventing "trial by ambush" and the use of "last minute disclosures" to try cases, as such tactics have been declared fundamentally unfair.
>
> *  *  *
>
> The pertinent question when determining whether the Commonwealth acted improperly when it fails to disclose evidence is whether it could reasonably have predicted possible defense strategies. *Thiel*, [470 A.2d] at 148. If it could, then the prosecutor will be "held to reasonable anticipation of what evidence in his possession might be material."

*Commonwealth v. Hanford*, 937 A.2d 1094, 1100-01 (Pa. Super. 2007) (footnote & some citations omitted).

In its opinion, the trial court emphasized that Rule 573(B)(1)(a)'s mandatory disclosure provision applies to "evidence **favorable to the**

- 12 -

**accused** that is material . . . to guilt," and that favorable evidence is material when "there is a reasonable probability that, had the evidence been disclosed . . . the result of the proceeding would have been different." Trial Ct's 1925(a) Statement, 9/13/22, at 3. The court found the CAD report was not favorable to Appellant, nor exculpatory, as it showed "he was home for a shorter period than what Defense Counsel claimed in his opening statement." *Id.* The court further reasoned the CAD report showed Appellant "would have had less time to drink enough alcohol (and smoke enough marijuana) for his BAC to rise to the levels indicated." *Id.*

The trial court also found the defense had not disclosed this anticipated defense before trial, and it was not foreseeable to the Commonwealth that Appellant would raise it. Trial Ct.'s 1925(a) Statement at 4. The court noted Trooper Galbraith's affidavit of probable cause stated Appellant had told him he just returned home 30 seconds prior to the trooper's arrival, and furthermore there was "an opened bottle of Jack Daniels" in the rear seat of Appellant's vehicle. *Id.* Upon learning of the defense, at trial, "the Commonwealth promptly notified Defense Counsel of the CAD report[.]" *Id.* Finally, the court also considered the CAD report would not have been material or relevant unless Appellant first raised the issue as a possible defense. *See id.* at 5.

We agree with the trial court's and Counsel's reasoning. The affidavit of probable cause clearly stated that Appellant told Trooper Galbraith he

arrived home "approximately 30 seconds prior to [the trooper's] arrival." Affidavit of Probable Cause at 1. There was no evidence Appellant refuted, at any time before opening arguments at trial, the affidavit's statement, nor the witness Buchman's descriptions of his earlier encounter with Appellant. Accordingly, we find no abuse of discretion in the trial court's reasoning that the Commonwealth could not have anticipated Appellant's defense theory.

For the same reasons, we agree with the trial court and Counsel the CAD report was not "favorable" to Appellant's defense. *See* Pa.R.Crim.P. 573(B)(1)(a). The CAD report would show Appellant was **not** home at 9:04 a.m., when Trooper Galbraith first arrived, but was home by 9:22 a.m. As trial counsel acknowledged at the trial proceeding, the CAD report was relevant to "establish when he was actually driving." *See* N.T. Trial at 114. Indeed, trial counsel argued the evidence was damaging because it would contradict or undermine a claim that Appellant was home longer than the 30-second timeframe he had initially given police. Finally, we note the trial court pointed out the difference of, "say 15 minutes," was not unduly prejudicial or material. *See* N.T. Trial at 125-27 (trial court commenting, "20 minutes, 15 minutes, you know, arguing about how many angels can dance on the head of a pin. . . . I don't think it is fatal to your defense.").

For the foregoing reasons, we would find no abuse of discretion in the trial court's denial of a mistrial, based on Appellant's claim of a discovery violation. We therefore agree with Counsel this issue would be frivolous.

- 14 -

## V. Sufficiency of the Evidence

The second issue presented in the **Anders** brief is whether there was sufficient evidence to support the DUI conviction. Counsel raises an argument that "the only person who possibly observed [Appellant] driving intoxicated was Gregory Buchman, the employee of Baldwin's Stone Yard." **Anders** Brief at 19. Counsel then opines this sufficiency issue lacks arguable merit, "given the strong evidence of consumption near the time of driving," including Buchman's description of Appellant, along with Appellant's own "uncontradicted disavowal of consuming any [alcohol or marijuana] at home after driving." **Id.** Counsel also cites the result of Appellant's blood draw at 10:27 a.m., when he was observed driving at 8:45 a.m. **Id.** at 21. We agree no relief would be due.

We note the applicable standard of review:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. [W]e may not weigh the evidence and substitute our judgment for the fact-finder. [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the

weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Gause*, 164 A.3d 532, 540-41 (Pa. Super. 2017) (citation omitted).

Appellant was found guilty under the following four sub-sections of the DUI statute:

**(a) General impairment.**

(1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

\* \* \*

**(c) Highest rate of alcohol.**—An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is 0.16% or higher within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

**(d) Controlled substances.—**An individual may not drive, operate or be in actual physical control of the movement of a vehicle under any of the following circumstances:

(1) There is in the individual's blood any amount of a:

(i) Schedule I controlled substance, as defined in . . . The Controlled Substance, Drug, Device and Cosmetic Act; [or]

\* \* \*

(iii) metabolite of a substance under subparagraph (i) or (ii).

75 Pa.C.S. § 3802(a)(1), (c), (d)(1)(i), (iii).

This Court has explained:

In order to prove a violation of [general impairment under Subsection 3802(a)(1)], the Commonwealth must show: (1) that the defendant was the operator of a motor vehicle and (2) that while operating the vehicle, the defendant was under the influence of alcohol to such a degree as to render him incapable of safe driving. To establish the second element, the Commonwealth must show that alcohol has

> substantially impaired the normal mental and physical faculties required to safely operate the vehicle. Substantial impairment, in this context, means a diminution or enfeeblement in the ability to exercise judgment, to deliberate or to react prudently to changing circumstances and conditions. Evidence that the driver was not in control of himself, such as failing to pass a field sobriety test, may establish that the driver was under the influence of alcohol to a degree which rendered him incapable of safe driving, notwithstanding the absence of evidence of erratic or unsafe driving.

*Gause*, 164 A.3d at 541 (citations omitted).

Additionally, "lay witnesses may testify to someone's readily observable physical condition or appearance that does not require medical training." *Gause*, 164 A.3d at 538 (citation omitted). As stated above, "[t]he Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Id.* at 541 (citation omitted).

Preliminarily, we note Appellant's post-sentence motion challenged only the weight of the evidence. Nevertheless, "a defendant can challenge the sufficiency of the evidence for the first time on appeal." *Commonwealth v.*

*Gezovich*, 7 A.3d 300, 302 n.2 (Pa. Super. 2010), *citing*, *inter alia*, Pa.R.Crim.P. 606 (A)(7). In any event, the arguments presented in Counsel's discussion, that the witness Buchman was the only person to have observed Appellant driving and that his testimony should not have been credited, go to the weight of the evidence.

Here, the trial court denied relief on Appellant's weight claim. *See* Memorandum Order Denying Appellant's Post-Sentence Motion (Memo. Order), 6/13/22, at 7-8. It found Appellant's argument, that the Commonwealth failed to prove he was intoxicated while driving, was belied by the record. *See id.* at 1. The Court reasoned the witness Buchman: observed Appellant sleeping in his car, around 8:30 or 8:45 a.m., with the engine running and music "blaring;" yelled and rapped on the car window and door in an unsuccessful attempt to wake up Appellant; observed Appellant eventually wake up, but in an "extraordinarily groggy" state; and observed Appellant, in "extremely slow motion," sit up and drive away. *Id.* at 2-3. Furthermore, the court recounted, Trooper Galbraith described Appellant, at the time they spoke, as having slurred, thick, and slow speech, as well as an odor of alcohol on his breath and person. *Id.* at 4. Appellant told the Trooper he drank two shots of whiskey around 11:30 the previous night, he drove but ultimately pulled over because he was tired, and he arrived home about 30 seconds prior to the Trooper's arrival. *Id.* Finally, the parties stipulated

Appellant's blood draw established a BAC of 0.202% and the presence of marijuana and a metabolite of marijuana. *Id.* at 4-5.

In light of the foregoing, undisputed evidence, we agree the evidence at trial supported a finding of guilt on Appellant's four DUI counts. *See* Memo. Order at 7-8. The testimony of Buchman and Trooper Galbraith were for the jury to weigh. *See Gause*, 164 A.3d at 541. Accordingly, we would conclude any challenge to the sufficiency or weight of the evidence would be frivolous.

Additionally, following an independent review of the record, we have found no possible meritorious issues that Counsel overlooked*.*

## VI. Conclusion

As we determine Counsel has complied with the technical requirements of *Anders* and *Santiago*, and that the pursuit of the CAD report-disclosure and sufficiency issues would be frivolous on appeal, we grant Counsel's petition to withdraw from representation and affirm Appellant's judgment of sentence.

Counsel's petition to withdraw from representation granted. Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/06/2021

- 19 -